IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD R. SISNEY, JR., FRANK FETTERS and RYAN WALKER, On Behalf of Themselves and All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | CIVIL ACTION NO. 5:15-cv-132 |
| TRINIDAD DRILLING, LP | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | CLASS ACTION |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs, RICHARD R. SISNEY, JR. ("Sisney"), FRANK FETTERS ("Fetters") and RYAN WALKER ("Walker") (collectively "Plaintiffs"), on behalf of themselves and all other similarly situated affected employees, file this Complaint against TRINIDAD DRILLING, LP ("Trinidad" or "Defendant"), showing in support as follows:

### I.       NATURE OF THE CASE

1.       This is a civil action brought by Plaintiffs pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et seq.*, (the "WARN Act") for Defendant's failure to give the required WARN Act written notice to Plaintiffs and similarly situated individuals (the "Class Members") in connection with recent Mass Layoffs and/or Plant Closings at Defendant's San Antonio, Texas, Woodward, Oklahoma and Springtown, Texas single sites of employment/operational units within those single sites of employment.

2.       Accordingly, Defendant is liable under the WARN Act for failing to provide Plaintiffs and the Class Members written notice, including 60 days' advance written notice, as required by the WARN Act.

## II.     THE PARTIES, JURISDICTION AND VENUE

### A.     Plaintiff Richard R. Sisney, Jr.

3.      Sisney is a natural person who resides in Bexar County, Texas. He has standing to file this lawsuit.

4.      Sisney was employed by Defendant at./from/through Defendant's yard located at or near 3598 South WW White Road, San Antonio, Texas.

5.      Sisney's employment with Defendant was verbally terminated without any advance written warning on or about December 19, 2014. At that time, Sisney had been a full-time employee of Defendant for approximately one year and three months.

### B.     Plaintiff Frank Fetters

6.      Fetters is a natural person. He has standing to file this lawsuit.

7.      Fetters was employed by Defendant at/from/through Defendant's yard located at or near 38734 South County Road 200, Woodward, Oklahoma, 73801.

8.      Fetters' employment with Defendant was verbally terminated without any advance written warning on or about January 2, 2015. At that time, Fetters had been a full-time employee of Defendant for several months.

### C.     Plaintiff Ryan Walker

9.      Walker is a natural person who resides in Van Zandt County, Texas. He has standing to file this lawsuit.

10.     Walker was employed by Defendant at./from/through Defendant's yard located at or near 4948 East Highway 199, Springtown, Texas.

11.    Walker's employment with Defendant was verbally ended without any advance written warning on or about January 13, 2015. At that time, Walker had been a full-time employee of Defendant for approximately one year and six months.

**D.    Class Members**

**1.    San Antonio Class Members**

12.    The San Antonio Class Members are affected employees who are similarly situated to Sisney, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at its single site of employment in San Antonio, Texas in the 30 day or 90 day period from December 19, 2014.

13.    Alternatively, the San Antonio Class Members are affected employees who are similarly situated to Sisney, and who experienced an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational unit in San Antonio, Texas in the 30 day or 90 day period from December 19, 2014.

**2.    Woodward Class Members**

14.    The Woodward Class Members are affected employees who are similarly situated to Fetters, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at its single site of employment in Woodward, Oklahoma in the 30 day or 90 day period from January 2, 2015.

15.    Alternatively, Woodward Class Members are affected employees who are similarly situated to Fetters, and who experienced an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational unit in Woodward, Oklahoma in the 30 day or 90 day period from January 2, 2015.

3.      **Springtown Class Members**

16.      The Springtown Class Members are affected employees who are similarly situated to Walker, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at its single site of employment in Springtown, Texas in the 30 day or 90 day period from January 13, 2015.

17.      Alternatively, The Springtown Class Members are affected employees who are similarly situated to Walker, and who experienced an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site of employment/operational unit in Springtown, Texas in the 30 day or 90 day period from January 13, 2015.

E.      **Defendant Trinidad Drilling, LP**

18.      Defendant is a foreign limited partnership organized under the laws of the State of Delaware.

19.      The general partner of Defendant is Trinidad Drilling, LLC.

20.      During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

21.      Defendant maintains multiple district offices/yards in Texas from which drilling rig workers, support personnel, supplies and equipment are based and dispatched on a variety of work projects, including oil and/or gas exploration and production projects. Those district offices/yards include locations in San Antonio, Texas, Springtown, Texas and Midland, Texas.

22.      Defendant has or had a fully operational district office/yard in Bexar County, Texas located at or near 3598 South WW White Road, San Antonio, Texas.

23.     Defendant may be served with summons through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

F.      **Jurisdiction and Venue**

24.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

25.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

26.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely 29 U.S.C. §§ 2101-2109.

27.     Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district. Moreover, pursuant to the WARN Act's venue provision, venue is proper in this District because, at all relevant times, Defendant transacted business in this District and continues to transact business in this District. 29 U.S.C. § 2104(a)(5). As previously identified, Defendant has one or more district offices/yards within this District.

28.     Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because, as previously identified, Defendant maintains business operations within the San Antonio Division and a substantial part of the events giving rise to the claims in this lawsuit occurred in the San Antonio Division.

29.     The claims of Plaintiffs and their respective Classes are joined in this lawsuit pursuant to Federal Rule of Civil Procedure 20(a) as those claims against Defendant involve

issues which arise out of the same transaction or occurrence/series of transactions or occurrences and involve common questions of law or fact.

### III.   FACTUAL BACKGROUND

30.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

31.    On information and belief, and at all material times, Defendant is and has been a business enterprise that employs 100 or more employees, excluding part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given at each single site of employment made the basis of this lawsuit.

32.    Employees, drilling rigs, vehicles, equipment and supplies of Defendant were based at Defendant's district offices/yards, including its district offices/yards in San Antonio, Texas, Woodward, Oklahoma and Springtown, Texas. From those district offices/yards, employees of Defendant primarily provided drilling operations/support of drilling operations in connection with oil and/or gas exploration/production in the general geographic vicinity around the relevant district office/yard. For example, employees, drilling rigs, vehicles, equipment and supplies of Defendant at the San Antonio district office/yard provided oilfield services in and around Bexar County, Texas, primarily in a play known as the Eagle Ford Shale.

### 1.    San Antonio District Office/Yard

33.    Sisney worked with numerous other employees of Defendant who were assigned to/worked out of the San Antonio, Texas district office/yard. Those employees performed drilling operations/support of drilling operations, primarily in oil and/or gas exploration/production in the Eagle Ford Shale. Like Sisney, those workers were subject to

Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit at the San Antonio, Texas district office/yard.

34.    Defendant's San Antonio, Texas district office/yard is/was a single site of employment under the WARN Act.

35.    Defendant operated numerous drilling rigs at/from/through the San Antonio district office/yard. Each drilling rig consisted of multiple crews that worked various shifts. Such a typical drilling rig included, during a seven day or 14 day hitch or work rotation, two tool pushers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would be replaced by another crew of similar structure and number with the only remaining employees typically being the tool pushers. So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees, exclusive of support personnel such as mechanics and administrative support.

36.    Each such drilling rig constitutes/constituted an operational unit of the San Antonio, Texas district office/yard. On information and belief, Defendant operated 10 or more drilling rigs at/from/through the San Antonio, Texas district office/yard.

37.    Sisney was verbally notified by Defendant on or about December 19, 2014 that his employment with Defendant was terminated. Sisney was not discharged for cause, did not voluntarily resign, and did not retire.

38.    On and around the time of his verbal termination, Sisney learned that numerous other similarly situated employees who were assigned to/worked out of Defendant's San Antonio, Texas district office/yard suffered an employment loss. In fact, around the time of Sisney's termination, Defendant began the process of "stacking rigs" whereby drilling rigs are

removed from operational work and stored with their crews typically being terminated as employees. On information and belief, as of approximately February 19, 2015, all drilling rigs operating at/from/through the San Antonio, Texas district office/yard have been stacked with the majority of those rigs being stacked within 30 days of Sisney's employment loss.

39.     On information and belief, the San Antonio district office/yard employment losses made the subject matter of this lawsuit occurred within a 30 day period of December 19, 2014. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of December 19, 2014, such employment losses not being the result of separate and distinct actions and causes.

40.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the San Antonio, Texas district office/yard suffered employment losses during the relevant time period. On information and belief, said employment loss was not a bona fide discharge for cause, voluntary departure, or retirement. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the San Antonio, Texas district office/yard had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

41.     On information and belief, 50 or more employees who were members of Defendant's drilling rig crews working at/from/through the San Antonio district office/yard experienced employment losses within a 30 day or 90 day period from December 19, 2014.

42.     On information and belief, there has been an effective cessation of the drilling operations performed from/through the San Antonio, Texas district office/yard within a 30 day or 90 day period from December 19, 2014.

*Plaintiffs' Original Class Action Complaint*                                                          8

43.     The exact number of employees who experienced an employment loss at the San Antonio, Texas district office/yard within a 30 day and 90 day period of Sisney's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through that district office/yard is information that is currently known only to Defendant.

44.     Sisney and the San Antonio Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

45.     Sisney and the San Antonio Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

46.     Sisney and the San Antonio Class Members were not provided with written notice, at any time, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

### 2.    <u>Woodward District Office/Yard</u>

47.     Fetters worked with numerous other employees of Defendant who were assigned to/worked out of the Woodward, Oklahoma district office/yard. Those employees performed drilling operations/support of drilling operations, primarily in oil and/or gas exploration/production in and around Woodward, Oklahoma. Like Fetters, those workers were

subject to Defendant's Mass Layoff and/or Plant Closing made the subject matter of this lawsuit at the Woodward, Oklahoma district office/yard.

48.     Defendant's Woodward, Oklahoma district office/yard was a single site of employment under the WARN Act.

49.     Defendant operated numerous drilling rigs at/from/through the Woodward district office/yard. Each drilling rig consisted of multiple crews that worked various shifts. Such a typical drilling rig included, during a seven day or 14 day hitch or work rotation, two tool pushers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would be replaced by another crew of similar structure and number with the only remaining employees typically being the tool pushers. So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees, exclusive of support personnel such as mechanics and administrative support.

50.     Each such drilling rig constitutes/constituted an operational unit of the Woodward, Oklahoma district office/yard. On information and belief, Defendant operated 10 or more drilling rigs at/from/through the Woodward, Oklahoma district office/yard.

51.     Fetters was verbally notified by Defendant on or about January 2, 2015 that his employment with Defendant was terminated. Fetters was not discharged for cause, did not voluntarily resign, and did not retire.

52.     On and around the time of his verbal termination, Fetters learned that numerous other similarly situated employees who were assigned to/worked out of Defendant's Woodward, Oklahoma district office/yard suffered an employment loss. In fact, around the time of Fetters' termination, Defendant began the process of "stacking rigs" whereby drilling rigs are removed

from operational work and stored with their crews typically being terminated as employees. On information and belief, Defendant has stacked all drilling rigs working at/from/through the Woodward, Oklahoma district office/yard as of approximately February 19, 2015, the majority of which were stacked within 30 days of Fetters' employment loss.

53.     On information and belief, the Woodward district office/yard employment losses made the subject matter of this lawsuit occurred within a 30 day period of January 2, 2015. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of January 2, 2015, such employment losses not being the result of separate and distinct actions and causes.

54.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the Woodward, Oklahoma district office/yard suffered employment losses during the relevant time period. On information and belief, said employment loss was not a bona fide discharge for cause, voluntary departure, or retirement. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the Woodward, Oklahoma district office/yard had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

55.     On information and belief, 50 or more employees who were members of Defendant's drilling rig crews working at/from/through the Woodward district office/yard experienced employment losses within a 30 day or 90 day period from January 2, 2015.

56.     On information and belief, there has been an effective cessation of the drilling operations performed from/through the Woodward, Oklahoma district office/yard within a 30 day or 90 day period from January 2, 2015.

57.     The exact number of employees who experienced an employment loss at the Woodward, Oklahoma district office/yard within a 30 day and 90 day period of Fetters' employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through that district office/yard is information that is currently known only to Defendant.

58.     Fetters and the Woodward Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

59.     Fetters and the Woodward Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

60.     Fetters and the Woodward Class Members were not provided with written notice, at any time, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

### 3.     Springtown District Office/Yard

61.     Walker worked with numerous other employees of Defendant who were assigned to/worked out of the Springtown, Texas district office/yard. Those employees performed drilling operations/support of drilling operations, primarily in oil and/or gas exploration/production in and around Springtown, Texas. Like Walker, those workers were subject to Defendant's Mass

Layoff and/or Plant Closing made the subject matter of this lawsuit at the Springtown, Texas district office/yard.

62.     Defendant's Springtown, Texas district office/yard was a single site of employment under the WARN Act.

63.     Defendant operated numerous drilling rigs at/from/through the Springtown district office/yard. Each drilling rig consisted of multiple crews that worked various shifts. Such a typical drilling rig included, during a seven day or 14 day hitch or work rotation, two tool pushers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would be replaced by another crew of similar structure and number with the only consistent employees being the tool pushers. So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees, exclusive of support personnel such as mechanics and administrative support.

64.     Each such drilling rig constitutes/constituted an operational unit of the Springtown, Texas district office/yard. On information and belief, Defendant operated seven or more drilling rigs at/from/through the Springtown, Texas district office/yard.

65.     Walker was verbally notified by Defendant on or about January 13, 2015 that his employment with Defendant had ended. Walker was not discharged for cause, did not voluntarily resign, and did not retire.

66.     On and around the time of his verbal termination, Walker learned that numerous other similarly situated employees who were assigned to/worked out of Defendant's Springtown, Texas district office/yard suffered an employment loss. In fact, around the time of Walker's termination, Defendant began the process of "stacking rigs" whereby drilling rigs are removed

from operational work and stored with their crews typically being terminated as employees. Walker learned that, after his employment loss, Defendant terminated the employment of numerous other drilling rig employees at the Springtown, Texas district office/yard. On information and belief, of the approximate seven drilling rigs operating out of the Springtown, Texas district office/yard prior to the Mass Layoff/Plant Closing at that location made the subject matter of this lawsuit, only approximately two such rigs continue to operate as of approximately February 19, 2015.

67.     On information and belief, the Springtown district office/yard employment losses made the subject matter of this lawsuit occurred within a 30 day period of January 13, 2015. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of January 13, 2015, such employment losses not being the result of separate and distinct actions and causes.

68.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce assigned to/working out of the Springtown, Texas district office/yard suffered employment losses during the relevant time period. On information and belief, said employment loss was not a bona fide discharge for cause, voluntary departure, or retirement. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce assigned to/working out of the Springtown, Texas district office/yard had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

69.     On information and belief, 50 or more employees who were members of Defendant's drilling rig crews working at/from/through the Springtown district office/yard experienced employment losses within a 30 day or 90 day period from January 13, 2015.

70.     On information and belief, there has been an effective cessation of the drilling operations performed from/through the Springtown, Texas district office/yard within a 30 day or 90 day period from January 2, 2015.

71.     The exact number of employees who experienced an employment loss at the Springtown, Texas district office/yard within a 30 day and 90 day period of Walker's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through that district office/yard is information that is currently known only to Defendant.

72.     Walker and the Springtown Class Members were not provided with 60 days' advance written notice by Defendant of their employment loss, Mass Layoff and/or Plant Closing.

73.     Walker and the Springtown Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

74.     Walker and the Springtown Class Members were not provided with written notice, at any time, of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## IV.   <u>WARN ACT CLAIMS</u>

75.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

76.     At material times, Plaintiffs and the Class Members were "full-time employees" of Defendant as that term is used in the Warn Act.

77.     At all material times, Defendant was and is an employer under the WARN Act. 29 C.F.R. § 639.3(a).

78.     At material times, Defendant employed 100 or more employees, excluding part-time employees.

79.     Defendant's San Antonio, Texas district office/yard constitutes/constituted a single site of employment for Sisney and the San Antonio Class Members. 29 C.F.R. § 639.3(i).

80.     Each drilling rig operating at/from/through Defendant's San Antonio, Texas district office/yard constitutes/constituted an operational unit within that single site of employment of Defendant. 29 C.F.R. § 639.3(j).

81.     Defendant's Woodward, Oklahoma district office/yard constitutes/constituted a single site of employment for Fetters and the Woodward Class Members. 29 C.F.R. § 639.3(i).

82.     Each drilling rig operating at/from/through Defendant's Woodward, Oklahoma district office/yard constitutes/constituted an operational unit within that single site of employment of Defendant. 29 C.F.R. § 639.3(j).

83.     Defendant's Springtown, Texas district office/yard constitutes/constituted a single site of employment for Walker and the Springtown Class Members. 29 C.F.R. § 639.3(i).

84.     Each drilling rig operating at/from/through Defendant's Springtown, Texas district office/yard constitutes/constituted an operational unit within that single site of employment of Defendant. 29 C.F.R. § 639.3(j).

85.     Plaintiffs maintain this action on behalf of themselves and on behalf of each other similarly situated employee.

86.     Each San Antonio Class Member is similarly situated to Sisney with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

87.     Each Woodward Class Member is similarly situated to Fetters with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

88.     Each Springtown Class Member is similarly situated to Walker with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

A.     **San Antonio, Texas District Office/Yard**

1.     **Mass Layoff**

89.     During a 30-day or 90 day period from Sisney's employment loss on or about December 19, 2014, Defendant ordered/executed a "Mass Layoff" at the San Antonio, Texas single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(1).

90.     Sisney and the San Antonio Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

91.     1/3 of the employees at the San Antonio, Texas single site of employment, totaling 50 or more, suffered an employment loss as a result of that Mass Layoff.

92.     Sisney and the San Antonio Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Sisney and the San Antonio Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an

employment loss as a result of Defendant's San Antonio, Texas Mass Layoff made the subject matter of this lawsuit.

### 2. <u>Plant Closing</u>

93.    Pleading in the alternative, Sisney and the San Antonio Class Members suffered an employment loss in connection with Defendant's San Antonio, Texas "Plant Closing" made the subject matter of this lawsuit within 30 days or 90 days of Sisney's employment loss on or about December 19, 2014. 29 C.F.R. § 639.3(b) & (f).

94.    Pleading in the alternative, with the number of drilling rigs stacked within 30 days or 90 days of Sisney's employment loss on or about December 19, 2014, Sisney and the San Antonio Class Members suffered a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', <u>or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees,</u> excluding any part-time employees." 29 C.F.R. § 639.3(b) (emphasis added). Each drilling rig operating at/from/through the San Antonio, Texas district office/yard was an operational unit of that single site of employment. 29 C.F.R. § 639.3(j).

95.    Sisney and the San Antonio Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's San Antonio, Texas Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Sisney and the San Antonio Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's San Antonio, Texas Plant Closing made the subject matter of this lawsuit.

*Plaintiffs' Original Class Action Complaint*                                                           18

### 3.    No Written Notice of Mass Layoff and/or Plant Closing

96.    Sisney and the San Antonio Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming employment loss, Mass Layoff and/or Plant Closing.

97.    Sisney and the San Antonio Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

98.    Sisney and the San Antonio Class Members were not provided with written notice, at any time, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

99.    On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the San Antonio, Texas Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

100.    On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the employment loss of Sisney and the San Antonio Class Members.

### 4.   Damages

101.    As a result of Defendant's violations of the WARN Act, Sisney and the San Antonio Class Members have suffered damages. Sisney and the San Antonio Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

### B.   Woodward, Oklahoma District Office/Yard

### 1.   Mass Layoff

102.    During a 30-day or 90 day period from Fetters' employment loss on or about January 2, 2015, Defendant ordered/executed a "Mass Layoff" at the Woodward, Oklahoma single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(1).

103.    Fetters and the Woodward Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

104.    1/3 of the employees at the Woodward, Oklahoma single site of employment, totaling 50 or more, suffered an employment loss as a result of that Mass Layoff.

105.    Fetters and the Woodward Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Fetters and the Woodward Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Woodward, Oklahoma Mass Layoff made the subject matter of this lawsuit.

2.      **Plant Closing**

106.     Pleading in the alternative, Fetters and the Woodward Class Members suffered an employment loss in connection with Defendant's Woodward, Oklahoma "Plant Closing" made the subject matter of this lawsuit within 30 days or 90 days of Fetters' employment loss on or about January 2, 2015. 29 C.F.R. § 639.3(b) & (f).

107.     Pleading in the alternative, with the number of drilling rigs stacked within 30 days or 90 days of Fetters' employment loss on or about January 2, 2015, Fetters and the Woodward Class Members suffered a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', <u>or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees</u>, excluding any part-time employees." 29 C.F.R. § 639.3(b) (emphasis added). Each drilling rig operating at/from/through the Woodward, Oklahoma district office/yard was an operational unit of that single site of employment. 29 C.F.R. § 639.3(j).

108.     Fetters and the Woodward Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Woodward, Oklahoma Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Fetters and the Woodward Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Woodward, Oklahoma Plant Closing made the subject matter of this lawsuit.

### 3.      No Written Notice of Mass Layoff and/or Plant Closing

109.    Fetters and the Woodward Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming employment loss, Mass Layoff and/or Plant Closing.

110.    Fetters and the Woodward Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

111.    Fetters and the Woodward Class Members were not provided with written notice, at any time, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

112.    On information and belief, Defendant did not notify the Oklahoma agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the Woodward, Oklahoma Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

113.    On information and belief, Defendant did not notify the Oklahoma agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the employment loss of Fetters and the Woodward Class Members.

### 4.    **Damages**

114.    As a result of Defendant's violations of the WARN Act, Fetters and the Woodward Class Members have suffered damages. Fetters and the Woodward Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

### C.    **Springtown, Texas District Office/Yard**

### 1.    **Mass Layoff**

115.    During a 30-day or 90 day period from Walker's employment loss on or about January 13, 2015, Defendant ordered/executed a "Mass Layoff" at the Springtown, Texas single site of employment as that term is defined by the WARN Act. 29 C.F.R. §§ 639.3(c) & 639.5(a)(1).

116.    Walker and the Springtown Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of this lawsuit. 29 C.F.R. § 639.3(f).

117.    1/3 of the employees at the Springtown, Texas single site of employment, totaling 50 or more, suffered an employment loss as a result of that Mass Layoff.

118.    Walker and the Springtown Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Walker and the Springtown Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Springtown, Texas Mass Layoff made the subject matter of this lawsuit.

2.       **Plant Closing**

119.     Pleading in the alternative, Walker and the Springtown Class Members suffered an employment loss in connection with Defendant's Springtown, Texas "Plant Closing" made the subject matter of this lawsuit within 30 days or 90 days of Walker's employment loss on or about January 13, 2015. 29 C.F.R. § 639.3(b) & (f).

120.     Pleading in the alternative, with the number of drilling rigs stacked within 30 days or 90 days of Walker's employment loss on or about January 13, 2015, Walker and the Springtown Class Members suffered a "Plant Closing." 29 C.F.R. §§639.3(b) & 639.5(a). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 29 C.F.R. § 639.3(b) (emphasis added). Each drilling rig operating at/from/through the Springtown, Texas district office/yard was an operational unit of that single site of employment. 29 C.F.R. § 639.3(j).

121.     Walker and the Springtown Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Springtown, Texas Plant Closing. 29 U.S.C. § 2101(5); 29 C.F.R. § 639(e). Walker and the Springtown Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Springtown, Texas Plant Closing made the subject matter of this lawsuit.

### 3.   No Written Notice of Mass Layoff and/or Plant Closing

122.   Walker and the Springtown Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming employment loss, Mass Layoff and/or Plant Closing.

123.   Walker and the Springtown Class Members were not provided with any written notice by Defendant prior to their employment loss, Mass Layoff and/or Plant Closing.

124.   Walker and the Springtown Class Members were not provided with written notice, at any time, of each and every of the following items in connection with their employment loss, Mass Layoff and/or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

125.   On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the Springtown, Texas Mass Layoff and/or Plant Closing made the subject matter of this lawsuit.

126.   On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 29 C.F.R. § 639.7(e) in connection with the employment loss of Walker and the Springtown Class Members.

4.      **Damages**

127.    As a result of Defendant's violations of the WARN Act, Walker and the Springtown Class Members have suffered damages. Walker and the Springtown Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

## V.      CLASS ACTION ALLEGATIONS

128.    Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

129.    Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act 29 U.S.C. § 2104(a)(5).

### A.      San Antonio Class

130.    Sisney brings this action on behalf of himself and all other similarly situated employees. Sisney seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its San Antonio, Texas district office/yard that experienced an employment loss during the 30 or 90 day period from the approximate date of Sisney's employment loss on or about December 19, 2014 without 60 days' advance written notice required by the WARN Act." Sisney requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification.

131.    Sisney and the San Antonio Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

132.    Sisney's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

133.    On information and belief, the San Antonio Class Members exceed 220 in number, and joinder is therefore impracticable. The precise number of San Antonio Class Members and their addresses are readily determinable from Defendant's records.

134.    There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

>    a. Whether the provisions of the WARN Act apply;
>
>    b. Whether Defendant's employees at the San Antonio, Texas district office/yard experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;
>
>    c. Whether Defendant failed to provide the notices required by the WARN Act;
>
>    d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and
>
>    e. The appropriate method to calculate damages under the WARN Act.

135.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

136.    A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for

Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

137.    Sisney is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the written notice required by the WARN Act. He is, therefore, a member of the class. Sisney is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Sisney is an adequate representative of the class and has the same interests as all of its members. Further, Sisney's claims are typical of the claims of all members of the San Antonio Class, and Sisney will fairly and adequately protect the interests of the absent members of the class. Sisney and his counsel do not have claims or interests that are adverse to the San Antonio Class Members.

138.    Furthermore, class action treatment of this lawsuit is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

**B.**     **Woodward Class**

139.    Fetters brings this action on behalf of himself and all other similarly situated employees. Fetters seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Woodward, Oklahoma district office/yard that experienced an employment loss during the 30 or 90 day period from the approximate date of Fetters' employment loss on or about January 2, 2015 without 60 days' advance written notice required

by the WARN Act." Fetters requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification.

140.    Fetters and the Woodward Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

141.    Fetters' claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

142.    On information and belief, the Woodward Class Members exceed 220 in number, and joinder is therefore impracticable. The precise number of Woodward Class Members and their addresses are readily determinable from Defendant's records.

143.    There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

> a. Whether the provisions of the WARN Act apply;
>
> b. Whether Defendant's employees at the Woodward, Oklahoma district office/yard experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;
>
> c. Whether Defendant failed to provide the notices required by the WARN Act;
>
> d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and
>
> e. The appropriate method to calculate damages under the WARN Act.

144.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

145.    A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

146.    Fetters is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the written notice required by the WARN Act. He is, therefore, a member of the class. Fetters is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Fetters is an adequate representative of the class and has the same interests as all of its members. Further, Fetters' claims are typical of the claims of all members of the Woodward Class, and Fetters will fairly and adequately protect the interests of the absent members of the class. Fetters and his counsel do not have claims or interests that are adverse to the Woodward Class Members.

147.    Furthermore, class action treatment of this lawsuit is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which provides that a plaintiff seeking to enforce

liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

C.   **Springtown Class**

148.   Walker brings this action on behalf of himself and all other similarly situated employees. Walker seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Springtown, Texas district office/yard that experienced an employment loss during the 30 or 90 day period from the approximate date of Walker's employment loss on or about January 13, 2015 without 60 days' advance written notice required by the WARN Act." Walker requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification.

149.   Walker and the Springtown Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

150.   Walker's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

151.   On information and belief, the Springtown Class Members exceed 110 in number, and joinder is therefore impracticable. The precise number of Springtown Class Members and their addresses are readily determinable from Defendant's records.

152.   There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

a. Whether the provisions of the WARN Act apply;

b. Whether Defendant's employees at the Springtown, Texas district office/yard experienced an employment loss in connection with a "Mass Layoff" and/or "Plant Closing" under the WARN Act;

c. Whether Defendant failed to provide the notices required by the WARN Act;

d. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and

e. The appropriate method to calculate damages under the WARN Act.

153.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

154.    A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

155.    Walker is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the written notice required by the WARN Act. He is, therefore, a member of the class. Walker is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Walker is an adequate representative of the class and has the same

interests as all of its members. Further, Walker's claims are typical of the claims of all members of the Springtown Class, and Walker will fairly and adequately protect the interests of the absent members of the class. Walker and his counsel do not have claims or interests that are adverse to the Springtown Class Members.

156.    Furthermore, class action treatment of this lawsuit is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

## VI.   JURY DEMAND

157.    Plaintiffs demand a jury trial.

## VII.    DAMAGES AND PRAYER

158.    Plaintiffs ask that the Court issue a summons for Defendant to appear and answer, and that Plaintiffs and the Class Members be awarded a judgment against Defendant or order(s) from the Court for the following:

a.    An order certifying that the San Antonio, Woodward and Springtown actions may be maintained as class actions under Federal Rule of Civil Procedure 23;

b.    Designation of Allen R. Vaught, Baron & Budd, P.C. as Class Counsel for all classes;

c.    All damages allowed by the WARN Act, including back pay and benefits as provided by 20 U.S.C. § 2104;

d.    Pre-judgment and post-judgment interest;

e.    Costs;

f.    Reasonable attorney's/attorneys' fees; and

g.    All other relief to which Plaintiffs and the Class Members are entitled.

Respectfully submitted,


By:     s/ Allen R. Vaught
        Allen R. Vaught
        Attorney-In-Charge
        TX Bar No. 24004966
        MS Bar No. 101695
        Baron & Budd, P.C.
        3102 Oak Lawn Avenue, Suite 1100
        Dallas, Texas  75219
        (214) 521-3605 – Telephone
        (214) 520-1181 – Facsimile
        avaught@baronbudd.com

        ATTORNEYS FOR PLAINTIFFS