IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD R. SISNEY, JR., FRANK | § | |
| FETTERS and RYAN WALKER, On Behalf of | § | |
| Themselves and All Others Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:15-cv-132-OLG |
| | § | |
| TRINIDAD DRILLING, LP | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | CLASS ACTION |

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, RICHARD R. SISNEY, JR. ("Sisney"), FRANK FETTERS ("Fetters") and RYAN WALKER ("Walker") (collectively "Plaintiffs"), on behalf of themselves and all other similarly situated affected employees, file this First Amended Complaint against TRINIDAD DRILLING, LP ("Trinidad" or "Defendant"), showing in support as follows:

## I.    NATURE OF THE CASE

1.    This is a civil action brought by Plaintiffs pursuant to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 *et seq.*, (the "WARN Act") for Defendant's failure to give the required WARN Act written notice to Plaintiffs and similarly situated individuals (the "Class Members") in connection with recent Mass Layoffs relative to oilfield workers at single sites of employment in connection with Defendant's (a) San Antonio, Texas, (b) Woodward, Oklahoma, and (c) North Central Texas operational regions.

2.    In the alternative, Plaintiffs bring this WARN Act case for Defendant's failure to give the required WARN Act written notice to Plaintiffs and the Class Members in connection with recent Plant Closings relative to oilfield workers at single sites of employment or

operational units within those singles sites of employment in connection with Defendant's (a) San Antonio, Texas, (b) Woodward, Oklahoma, and (c) North Central Texas operational regions.

3.      Accordingly, Defendant is liable under the WARN Act for failing to provide Plaintiffs and the Class Members written notice, including 60 days' advance written notice, as required by the WARN Act.

## II.     THE PARTIES, JURISDICTION AND VENUE

### A.      Plaintiff Richard R. Sisney, Jr.

4.      Sisney is a natural person who resides in Bexar County, Texas. He has standing to file this lawsuit.

5.      Sisney was employed by Defendant as an oilfield worker where he worked on Defendant's drilling rigs operating in and around South Texas and/or other locations as shown on Defendant's daily International Association of Drilling Contractor reports ("IADC Reports"). Sisney primarily worked in connection with drilling rigs of Defendant centered around/operating from what Defendant represents to the public as its "San Antonio Yard" at 3598 S WW White, San Antonio, Texas 78222 (the "San Antonio Yard").

6.      Sisney's employment with Defendant was verbally terminated without any advance written warning on or about December 19, 2014. At that time, Sisney had been a full-time employee of Defendant for approximately one year and three months.

### B.      Plaintiff Frank Fetters

7.      Fetters is a natural person. He has standing to file this lawsuit.

8.      Fetters was employed by Defendant as an oilfield worker where he worked on Defendant's drilling rigs operating in and around Oklahoma and/or other locations as shown on Defendant's IADC Reports. Fetters primarily worked in connection with Defendant's drilling rigs centered around/operating from Defendant's current or former rig yard/business location

located at or near 38734 South County Road 200, Woodward, Oklahoma, 73801 (the "Woodward Yard").

9.      Fetters' employment with Defendant was verbally terminated without any advance written warning on or about January 2, 2015. At that time, Fetters had been a full-time employee of Defendant for several months.

### C.      **Plaintiff Ryan Walker**

10.      Walker is a natural person who resides in Van Zandt County, Texas. He has standing to file this lawsuit.

11.      Walker was employed by Defendant as an oilfield worker where he primarily worked on Defendant's drilling rigs in and around the North Central Texas area and/or other locations as shown in Defendant's IADC Reports. Walker primarily worked in connection with Defendant's drilling rigs centered around/operating from what Defendant represents to the public as its "North Central Texas" business location located at or near 4948 East Highway 199, Springtown, Texas 76082 (the "North Central Texas Yard").

12.      Walker's employment with Defendant was verbally ended without any advance written warning on or about January 13, 2015. At that time, Walker had been a full-time employee of Defendant for approximately one year and six months.

### D.      **Class Members**

13.      There are three distinct classes/sub-classes in this lawsuit – the San Antonio Class Members, the Woodward Class Members, and the North Central Texas Class Members (collectively, the "Class Members.")

14.      Joinder of the claims of the Plaintiffs and Class Members is appropriate in this action pursuant to Federal Rule of Civil Procedure 20(a)(1) as Plaintiffs and the Class Members

assert claims for relief jointly, severally, or in the alternative arising out of the same transaction or occurrence, or series of transactions or occurrences in connection with the Mass Layoffs and/or Plant Closings made the subject matter of this lawsuit. There are questions of law and/or fact common to claims of the Plaintiffs and Class Members.

## 1.  San Antonio Class Members

15.  The San Antonio Class Members are affected employees who are similarly situated to Sisney, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at/within the single site(s) of employment for Sisney and the San Antonio Class Members in the 30 day or 90 day period from Sisney's employment loss.

16.  Alternatively, the San Antonio Class Members are affected employees who are similarly situated to Sisney, and who experienced an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site(s) of employment/operational units at/within such single site(s) of employment for Sisney and the San Antonio Class Members in the 30 day or 90 day period from Sisney's employment loss.

17.   On information and belief, Defendant's San Antonio Yard constituted a single site of employment for the Sisney and San Antonio Class Members. 20 C.F.R. § 639.3(i)(1), (3), (6) and/or (8).

18.  Alternatively, Defendant's drilling rigs and/or rig yard operating in the Eagle Ford Shale area and/or in the service area of the San Antonio Yard are collectively a single site of employment as they operate in that geographic area, are used for the same purpose of facilitating the drilling of wells, and share the same employees and equipment. 20 C.F.R. § 639.3(i)(3) and/or (8).

19. Alternatively, Sisney and San Antonio Class Members worked at a single site(s) of employment in connection with a truly unusual organizational situation as shown by the facts. 20 C.F.R. § 639.3(i) (8).

20. Alternatively, each drilling rig operating at/from/through relevant single site of employment for Sisney and San Antonio Class Members constitutes/constituted an operational unit within such single site of employment of Defendant. 20 C.F.R. § 639.3(j).

21. Alternatively, should discovery reveal that there alternative single site(s) of employment for the Sisney and San Antonio Class Members pursuant to 20 C.F.R. § 693.3(i), then Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

### 2. Woodward Class Members

22. The Woodward Class Members are affected employees who are similarly situated to Fetters, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at/within the single site(s) of employment for Fetters and the Woodward Class Members in the 30 day or 90 day period Fetters' employment loss.

23. Alternatively, Woodward Class Members are affected employees who are similarly situated to Fetters, and who experienced an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site(s) of employment/operational units at/within such single site(s) of employment for Fetters and the Woodward Class Members in the 30 day or 90 day period from Fetters' employment loss.

24. On information and belief, Defendant's Woodward Yard constituted a single site of employment for Fetters and Woodward Class Members. 20 C.F.R. § 639.3(i)(1), (3), (6) and/or (8).

25.     Alternatively, Defendant's drilling rigs and/or rig yard operating in Oklahoma and/or in the service area of the Woodward Yard are collectively a single site of employment as they operate in that geographic area, are used for the same purpose of facilitating the drilling of wells, and share the same employees and equipment. 20 C.F.R. § 639.3(i)(3) and/or (8).

26.     Alternatively, Fetters and Woodward Class Members worked at a single site(s) of employment in connection with a truly unusual organizational situation as shown by the facts. 20 C.F.R. § 639.3(i) (8).

27.     Alternatively, each drilling rig operating at/from/through relevant single site of employment for the Fetters and Woodward Class Members constitutes/constituted an operational unit within such single site of employment of Defendant. 20 C.F.R. § 639.3(j).

28.     Alternatively, should discovery reveal that there alternative single site(s) of employment for the Fetters and Woodward Class Members pursuant to 20 C.F.R. § 693.3(i), then Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

### 3.     North Central Texas Class Members

29.     The North Central Texas Class Members are affected employees who are similarly situated to Walker, and who were or may reasonably be expected to experience an employment loss as a consequence of Defendant's Mass Layoff at/within the single site(s) of employment for Walker and the North Central Texas Class Members  in the 30 day or 90 day period from Walker's employment loss.

30.     Alternatively, the North Central Texas Class Members are affected employees who are similarly situated to Walker, and who experienced an employment loss as a consequence of Defendant's Plant Closing at Defendant's single site(s) of employment/operational units

at/within such single site(s) of employment for Walker and the North Central Texas Class Members, in the 30 day or 90 day period from Walker's employment loss.

31.    On information and belief, Defendant's North Central Texas Yard constituted a single site of employment for the Walker and North Central Texas Class Members. 20 C.F.R. § 639.3(i)(1), (3), (6) and/or (8).

32.    Alternatively, Defendant's drilling rigs and/or rig yard operating in the North Central Texas area and/or in the service area of the North Central Texas Yard are collectively a single site of employment as they operate in that geographic area, are used for the same purpose of facilitating the drilling of wells, and share the same employees and equipment. 20 C.F.R. § 639.3(i)(3) and/or (8).

33.    Alternatively, Walker and North Central Texas Class Members worked at a single site(s) of employment in connection with a truly unusual organizational situation as shown by the facts.  20 C.F.R. § 639.3(i) (8).

34.    Alternatively, each drilling rig operating at/from/through relevant single site of employment for Walker and North Central Texas Class Members constitutes/constituted an operational unit within such single site of employment of Defendant. 20 C.F.R. § 639.3(j).

35.    Alternatively, should discovery reveal that there alternative single site(s) of employment for the Walker and North Central Texas Class Members pursuant to 20 C.F.R. § 693.3(i), then Plaintiffs reserve the right to modify the class definition or establish sub-classes in connection with any amended pleading and/or motion for class certification.

**E.    <u>Defendant Trinidad Drilling, LP</u>**

36.    Defendant is a foreign limited partnership organized under the laws of the State of Delaware.

37.     The general partner of Defendant is Trinidad Drilling, LLC.

38.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas.

39.     Defendant maintains multiple district offices/yards in Texas from which drilling rig workers, support personnel, supplies and equipment are based and dispatched on a variety of work projects, including oil and/or gas exploration and production projects. Those district offices/yards include locations in San Antonio, Texas, Springtown, Texas and Midland, Texas.

40.     Defendant has or had a fully operational district office/yard in Bexar County, Texas located at or near 3598 South WW White Road, San Antonio, Texas.

41.     Defendant has been served and has entered an appearance in this lawsuit.

**F.      Jurisdiction and Venue**

42.     The Court has personal jurisdiction over Defendant based on both general and specific jurisdiction.

43.     During all times relevant to this lawsuit, Defendant has done business in the State of Texas and continues to do business in the State of Texas.

44.     The Court has subject matter jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. § 1331, because Plaintiffs base their claims on federal law, namely 29 U.S.C. §§ 2101-2109.

45.     Venue is proper in the United States District Court for the Western District of Texas because a substantial part of the events giving rise to the claims in this lawsuit occurred in this judicial district. Moreover, pursuant to the WARN Act's venue provision, venue is proper in this District because, at all relevant times, Defendant transacted business in this District and

continues to transact business in this District. 29 U.S.C. § 2104(a)(5). As previously identified, Defendant has one or more district offices/yards within this District.

46. Venue is proper in the San Antonio Division of the United States District Court for the Western District of Texas because, as previously identified, Defendant maintains business operations within the San Antonio Division and a substantial part of the events giving rise to the claims in this lawsuit occurred in the San Antonio Division.

### III.     FACTUAL BACKGROUND

47. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

48. On information and belief, and at all material times, Defendant is and has been a business enterprise that employs 100 or more employees, excluding part-time employees and employees who have worked less than 6 months in the 12 month period preceding the first date that WARN Act notice was required to be given at each single site of employment made the basis of this lawsuit.

49. Employees, drilling rigs, vehicles, equipment and supplies of Defendant were based at Defendant's district offices/yards, including the San Antonio Yard, Woodward Yard and North Central Texas Yard. From those district offices/yards, employees of Defendant primarily provided drilling operations/support of drilling operations in connection with oil and/or gas exploration/production in the general geographic vicinity around the relevant district office/yard. For example, employees, drilling rigs, vehicles, equipment and supplies of Defendant at the San Antonio Yard primarily provided oilfield services in and around Bexar County, Texas, primarily in a play known as the Eagle Ford Shale.

### A.   San Antonio Yard/Service Area

50. During the time period before Sisney's employment loss, Defendant operated many drilling rigs connection with its drilling operations in and around the Eagle Ford Shale oilfield play of South Texas. The primary business location and rig yard for this area of Defendant's drilling rig operations was/is, on information and belief, the San Antonio Yard.

51. Sisney and the San Antonio Class Members worked on and/or in support of Defendant's drilling rigs operating in the Eagle Ford Shale area of South Texas and/or other locations as shown by Defendant's IADC reports.

52. Each such drilling rig consisted of multiple crews that worked various shifts. A typical drilling rig included, during a hitch[1] or work crew rotation, one or two tool pushers/rig managers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would typically be replaced by another crew of similar structure and number with the only remaining employees usually being the tool pusher(s)/rig manager(s). So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees for all hitches, exclusive of management personnel and/or support personnel such as mechanics, drivers, and administrative support.

53. Drilling rigs worked on by Sisney and the San Antonio Class Members regularly exchanged crew members between the different drilling rigs. Sometimes those crew member changes occurred during a hitch. Additionally, after a hitch, one or more employees would regularly be assigned to a different drilling rig thereby changing the crew composition for more than one drilling rig.

54. Drilling rigs worked on by Sisney and San Antonio Class Members regularly exchanged equipment, such as drill pipe and tools, between the different drilling rigs.

---

[1] Hitches generally lasted one week or two weeks, depending on the location.

55.     Management of Sisney and the San Antonio Class Members was primarily conducted through Defendant's San Antonio Yard.

56.     Sisney was verbally notified by Defendant on or about December 19, 2014 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Sisney was not discharged for cause, did not voluntarily resign, and did not retire.

57.     Sisney worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Sisney, those workers are/were subject to Defendant's Mass Layoff, or in the alternative, Plant Closing made the subject matter of this lawsuit for the San Antonio Class Members.

58.     On and around the time of his verbal notifications of employment losses, Sisney learned that numerous other similarly situated employees of Defendant suffered an employment loss. In fact, around the time of Sisney's employment loss, Defendant began the process of "stacking rigs" whereby drilling rigs are removed from operational work and stored with their crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, managers and/or support personnel, such as mechanics, drivers, and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews. On information and belief, as of approximately February 19, 2015, all drilling rigs operating at/from/through the San AntonioYard were stacked with the majority of those rigs being stacked within 30 days of Sisney's employment loss.

59.     On information and belief, the employment losses at the single site(s) of employment for Sisney and San Antonio Class Members occurred within a 30 day period of

Sisney's employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Sisney's employment loss, such employment losses not being the result of separate and distinct actions and causes.

60. On information and belief, 50 or more employees totaling 1/3 or more of the workforce at the single site(s) of employment for Sisney and San Antonio Class Members experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce at the single site(s) of employment for Sisney and the San Antonio Class Members had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

61. The exact number of employees who experienced an employment loss at the single site(s) of employment for Sisney and the San Antonio Class Members within a 30 day and 90 day period of Sisney's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the single site(s) of employment for Sisney and the San Antonio Class Members is information that is currently known only to Defendant.

62. Sisney and the San Antonio Class Members were not provided with 60 days' advance written notice, in compliance with 20 C.F.R. § 639.7 by Defendant of their employment loss, Mass Layoff or Plant Closing

63. Sisney and the San Antonio Class Members were not provided with 60 days' advance written notice prior to their employment loss of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is

expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## B. **Woodward Yard**

64.    During the time period before Fetters' employment loss, Defendant operated many drilling rigs connection with its drilling operations in and around Woodward, Oklahoma. The primary business location and rig yard for this area of Defendant's drilling rig operations was/is, on information and belief, the Woodward Yard.

65.    Fetters and Woodward Class Members worked on and/or in support of Defendant's drilling rigs operating in Oklahoma and/or other locations as shown by Defendant's IADC reports.

66.    Each such drilling rig consisted of multiple crews that worked various shifts. A typical drilling rig included, during a hitch or work crew rotation, one or two tool pushers/rig managers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work rotation, that crew would typically be replaced by another crew of similar structure and number with the only remaining employees usually being the tool pusher(s)/rig manager(s). So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees for all hitches, exclusive of management personnel and/or support personnel such as mechanics, drivers, and administrative support.

67.     Drilling rigs worked on by Fetters and the Woodward Class Members regularly exchanged crew members between the different drilling rigs. Sometimes those crew member changes occurred during a hitch. Additionally, after a hitch, one or more employees would regularly be assigned to a different drilling rig thereby changing the crew composition for more than one drilling rig.

68.     Drilling rigs worked on by Fetters and Woodward Class Members regularly exchanged equipment, such as drill pipe and tools, between the different drilling rigs.

69.     Management of Fetters and the Woodward Class Members was primarily conducted through Defendant's Woodward Yard.

70.     Fetters was verbally notified by Defendant on or about January 2, 2015 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Fetters was not discharged for cause, did not voluntarily resign, and did not retire.

71.     Fetters worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Fetters, those workers are/were subject to Defendant's Mass Layoff, or in the alternative, Plant Closing made the subject matter of this lawsuit for the Woodward Class Members.

72.     On and around the time of his verbal notifications of employment losses, Fetters learned that numerous other similarly situated employees of Defendant suffered an employment loss. In fact, around the time of Fetters' employment loss, Defendant began the process of "stacking rigs" whereby drilling rigs are removed from operational work and stored with their crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, managers and/or support personnel, such as mechanics, drivers,

and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews.

73.     On information and belief, the employment losses at the single site(s) of employment for Fetters and Woodward Class Members occurred within a 30 day period of Fetters' employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Fetters' employment loss, such employment losses not being the result of separate and distinct actions and causes.

74.     On information and belief, 50 or more employees totaling 1/3 or more of the workforce at the single site(s) of employment for Fetters and Woodward Class Members experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce at the single site(s) of employment for Fetters and the Woodward Class Members had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

75.     The exact number of employees who experienced an employment loss at the single site(s) of employment for Fetters and the Woodward Class Members within a 30 day and 90 day period of Fetters' employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the single site(s) of employment for Fetters and the Woodward Class Members is information that is currently known only to Defendant.

76.     Fetters and the Woodward Class Members were not provided with 60 days' advance written notice, in compliance with 20 C.F.R. § 639.7 by Defendant of their employment loss, Mass Layoff or Plant Closing

77.     Fetters and the Woodward Class Members were not provided with 60 days' advance written notice prior to their employment loss of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

C.   **North Central Texas Yard**

78.     During the time period before Walker's employment loss, Defendant operated many drilling rigs connection with its drilling operations in and around North Central Texas. The primary business location and rig yard for this area of Defendant's drilling rig operations was/is, on information and belief, the North Central Texas Yard.

79.     Walker and North Central Texas Class Members worked on and/or in support of Defendant's drilling rigs operating in North Central Texas and/or other locations as shown by Defendant's IADC reports.

80.     Each such drilling rig consisted of multiple crews that worked various shifts. A typical drilling rig included, during a hitch or work crew rotation, one or two tool pushers/rig managers, two drillers, two derrick men, two motor men, and four to six floor hands that split daily operations into 12 hour shifts in a typical workday. During the subsequent hitch or work

rotation, that crew would typically be replaced by another crew of similar structure and number with the only remaining employees usually being the tool pusher(s)/rig manager(s). So, a typical drilling rig of Defendant would have a crew of approximately 22 to 26 employees for all hitches, exclusive of management personnel and/or support personnel such as mechanics, drivers, and administrative support.

81.     Drilling rigs worked on by Walker and the North Central Texas Class Members regularly exchanged crew members between the different drilling rigs. Sometimes those crew member changes occurred during a hitch. Additionally, after a hitch, one or more employees would regularly be assigned to a different drilling rig thereby changing the crew composition for more than one drilling rig.

82.      Drilling rigs worked on by Walker and North Central Texas Class Members regularly exchanged equipment, such as drill pipe and tools, between the different drilling rigs.

83.     Management of Walker and the North Central Texas Class Members was primarily conducted through Defendant's North Central Texas Yard.

84.     Walker was verbally notified by Defendant on or about January 13, 2015 that his employment with Defendant was terminated or that he otherwise was subject to an employment loss. Walker was not discharged for cause, did not voluntarily resign, and did not retire.

85.     Walker worked with numerous other employees of Defendant. Those employees performed drilling operations/support of drilling operations for Defendant. Like Walker, those workers are/were subject to Defendant's Mass Layoff, or in the alternative, Plant Closing made the subject matter of this lawsuit for the North Central Texas Class Members.

86.     On and around the time of his verbal notifications of employment losses, Walker learned that numerous other similarly situated employees of Defendant suffered an employment

loss. In fact, around the time of Walker's employment loss, Defendant began the process of "stacking rigs" whereby drilling rigs are removed from operational work and stored with their crews typically being terminated as employees or otherwise experiencing an employment loss. On information and belief, managers and/or support personnel, such as mechanics, drivers, and/or administrative employees, also experienced employment losses in connection with the stacking of drilling rigs and employment losses of the drilling rig crews.

87.    On information and belief, the employment losses at the single site(s) of employment for Walker and North Central Texas Class Members occurred within a 30 day period of Walker's employment loss. Alternatively, and on information and belief, those employment losses occurred within a 90 day period of Walker's employment loss, such employment losses not being the result of separate and distinct actions and causes.

88.    On information and belief, 50 or more employees totaling 1/3 or more of the workforce at the single site(s) of employment for Walker and North Central Texas Class Members experienced employment losses during the relevant time period. On information and belief, said employment losses were not bona fide discharges for cause, voluntary departures, or retirements. On information and belief, 50 or more of those affected employees totaling 1/3 or more of the workforce at the single site(s) of employment for Walker and the North Central Class Members had been full-time employees of Defendant for six or more months in the 12 month period preceding the date WARN Act notice was due.

89.    The exact number of employees who experienced an employment loss at the single site(s) of employment for Walker and the North Central Texas Class Members within a 30 day and 90 day period of Walker's employment loss is information that is only known to Defendant. Similarly, the exact number of employees employed at/from/through the single site(s)

of employment for Walker and the North Central Texas Class Members is information that is currently known only to Defendant.

90.     Walker and the North Central Texas Class Members were not provided with 60 days' advance written notice, in compliance with 20 C.F.R. § 639.7 by Defendant of their employment loss, Mass Layoff or Plant Closing

91.     Walker and the North Central Texas Class Members were not provided with 60 days' advance written notice prior to their employment loss of each and every of the following items in connection with their employment loss: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

## IV.    <u>WARN ACT CLAIMS</u>

92.     Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

93.     At all relevant times, Plaintiffs and the Class Members were "full-time employees" of Defendant as that term is used in the Warn Act.

94.     At all relevant times, Defendant was and is an employer under the WARN Act. 29 C.F.R. § 639.3(a).

95.     At material times, Defendant employed, and continues to employ, 100 or more employees, excluding part-time employees.

96.     Plaintiffs maintain this action on behalf of themselves and on behalf of each other similarly situated employee.

97.     Each San Antonio Class Member is similarly situated to Sisney with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

98.     Each Woodward Class Member is similarly situated to Fetters with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

99.     Each North Central Texas Class Member is similarly situated to Walker with respect to his or her rights under the WARN Act. 29 U.S.C. § 2104(a)(5).

**A.   Sisney and the San Antonio Class**

100.    On information and belief, Defendant's San Antonio Yard constituted a single site of employment for the Sisney and San Antonio Class Members. 20 C.F.R. § 639.3(i)(1), (3), (6) and/or (8).

101.    Alternatively, Defendant's drilling rigs and/or rig yard operating in the Eagle Ford Shale area and/or in the service area of the San Antonio Yard are collectively a single site of employment as they operate in that geographic area, are used for the same purpose of facilitating the drilling of wells, and share the same employees and equipment. 20 C.F.R. § 639.3(i)(3) and/or (8).

102.    Alternatively, Sisney and San Antonio Class Members worked at a single site(s) of employment in connection with a truly unusual organizational situation as shown by the facts. 20 C.F.R. § 639.3(i) (8).

103.    Alternatively, each drilling rig operating at/from/through relevant single site of employment for Sisney and San Antonio Class Members constitutes/constituted an operational unit within such single site of employment of Defendant. 20 C.F.R. § 639.3(j).

104.     Sisney reserves the right to amend the claimed "single site of employment" as determined by the facts in this lawsuit that are consistent with the broad definition of that phrase as set forth in 20 C.F.R. § 639.3(i).

### 1.     San Antonio Yard Mass Layoff

105.     During a 30 day or 90 day period from Sisney's employment loss, Defendant ordered/executed a "Mass Layoff" at the at Defendant's single site(s) of employment for the Sisney and San Antonio Class Members. 20 C.F.R. §§ 639.3(c) & 639.5(a)(i).

106.     Sisney and the San Antonio Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of Sisney's claims in this lawsuit. 20 C.F.R. § 639.3(f).

107.     On information and belief, 1/3 of the employees at the single site of employment made the subject matter of Sisney's claims in this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

108.     Sisney and the San Antonio Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Sisney and the San Antonio Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Mass Layoff made the subject matter of Sisney's claims in this lawsuit.

### 2.     San Antonio Yard Plant Closing

109.     Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of Sisney's employment loss, Sisney and the San

Antonio Class Members suffered a "Plant Closing." 20 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 20 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through the single site of employment for Sisney and the San Antonio Class Members was an operational unit of that single site of employment. 20 C.F.R. § 639.3(j).

110.    Sisney and the San Antonio Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Plant Closing made the subject matter of Sisney's claims in this lawsuit. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Sisney and the San Antonio Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Plant Closing made the subject matter of Sisney's claims in this lawsuit.

### 3.    No Written Notice of Mass Layoff or Plant Closing

111.    Sisney and the San Antonio Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff or Plant Closing.

112.    Sisney and the San Antonio Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff or Plant Closing.

113.    Sisney and the San Antonio Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in

connection with their employment loss, Mass Layoff or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect; (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

114.    On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(e) in connection with the Mass Layoff or Plant Closing made the subject matter of Sisney's claims in this lawsuit.

115.    On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(e) in connection with the termination of the employment loss of Sisney and the San Antonio Class Members.

### 4.    Damages

116.    As a result of Defendant's violations of the WARN Act, Sisney and the San Antonio Class Members have suffered damages. Sisney and the San Antonio Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

### B.  Fetters and the Woodward Class

117.    On information and belief, Defendant's Woodward Yard constituted a single site of employment for Fetters and Woodward Class Members. 20 C.F.R. § 639.3(i)(1), (3), (6) and/or (8).

118.    Alternatively, Defendant's drilling rigs and/or rig yard operating in Oklahoma and/or in the service area of the Woodward Yard are collectively a single site of employment as they operate in that geographic area, are used for the same purpose of facilitating the drilling of wells, and share the same employees and equipment. 20 C.F.R. § 639.3(i)(3) and/or (8).

119.    Alternatively, Fetters and Woodward Class Members worked at a single site(s) of employment in connection with a truly unusual organizational situation as shown by the facts. 20 C.F.R. § 639.3(i) (8).

120.    Alternatively, each drilling rig operating at/from/through relevant single site of employment for the Fetters and Woodward Class Members constitutes/constituted an operational unit within such single site of employment of Defendant. 20 C.F.R. § 639.3(j).

121.    Fetters reserves the right to amend the claimed "single site of employment" as determined by the facts in this lawsuit that are consistent with the broad definition of that phrase as set forth in 20 C.F.R. § 639.3(i).

### 1.    <u>Woodward Yard Mass Layoff</u>

122.    During a 30 day or 90 day period from Fetters' employment loss, Defendant ordered/executed a "Mass Layoff" at the Woodward Yard single site of employment as that term is defined by the WARN Act. 20 C.F.R. §§ 639.3(c) & 639.5(a)(i).

123.    Fetters and the Woodward Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of Fetters' claims in this lawsuit. 20 C.F.R. § 639.3(f).

124.    On information and belief, 1/3 of the employees at the single site of employment made the subject matter of Fetters' claims in this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

125.     Fetters and the Woodward Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Fetters and the Woodward Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Mass Layoff made the subject matter of Fetters' claims in this lawsuit.

## 2.     **Woodward Yard Plant Closing**

126.     Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of Fetters' employment loss, Fetters and the Woodward Class Members suffered a "Plant Closing." 20 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 20 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through the single site of employment for Fetters and the Woodrward Class Members was an operational unit of that single site of employment. 20 C.F.R. § 639.3(j).

127.     Fetters and the Woodward Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Plant Closing made the subject matter of Fetters' claims in this lawsuit. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Fetters and the Woodward Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should

have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Plant Closing made the subject matter of Fetters' claims in this lawsuit.

3.    <u>No Written Notice of Mass Layoff or Plant Closing</u>

128.    Fetters and the Woodward Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff or Plant Closing.

129.    Fetters and the Woodward Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff or Plant Closing.

130.    Fetters and the Woodward Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

131.    On information and belief, Defendant did not notify the Oklahoma agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(e) in connection with the Mass Layoff or Plant Closing made the subject matter of Fetters' claims in this lawsuit.

132.    On information and belief, Defendant did not notify the Oklahoma agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a)

and 20 C.F.R. § 639.7(e) in connection with the termination of the employment loss of Fetters and the Woodward Class Members.

### 4. Damages

133.    As a result of Defendant's violations of the WARN Act, Fetters and the Woodrward Class Members have suffered damages. Fetters and the Woodward Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

### C.  Walker and the North Texas Class Members

134.    On information and belief, Defendant's North Central Texas Yard constituted a single site of employment for the Walker and North Central Texas Class Members. 20 C.F.R. § 639.3(i)(1), (3), (6) and/or (8).

135.    Alternatively, Defendant's drilling rigs and/or rig yard operating in the North Central Texas area and/or in the service area of the North Central Texas Yard are collectively a single site of employment as they operate in that geographic area, are used for the same purpose of facilitating the drilling of wells, and share the same employees and equipment. 20 C.F.R. § 639.3(i)(3) and/or (8).

136.    Alternatively, Walker and North Central Texas Class Members worked at a single site(s) of employment in connection with a truly unusual organizational situation as shown by the facts.  20 C.F.R. § 639.3(i) (8).

137.    Alternatively, each drilling rig operating at/from/through relevant single site of employment for Walker and North Central Texas Class Members constitutes/constituted an operational unit within such single site of employment of Defendant. 20 C.F.R. § 639.3(j).

138. Walker reserves the right to amend the claimed "single site of employment" as determined by the facts in this lawsuit that are consistent with the broad definition of that phrase as set forth in 20 C.F.R. § 639.3(i).

### 1. North Central Texas Yard Mass Layoff

139. During a 30 day or 90 day period from Walker's employment loss, Defendant ordered/executed a "Mass Layoff" at the North Central Texas Yard single site of employment as that term is defined by the WARN Act. 20 C.F.R. §§ 639.3(c) & 639.5(a)(i).

140. Walker and the North Central Texas Class Members suffered an employment loss in connection with Defendant's "Mass Layoff" made the subject matter of Walker's claims in this lawsuit. 20 C.F.R. § 639.3(f).

141. On information and belief, 1/3 of the employees at the single site of employment made the subject matter of Walker's claims in this lawsuit, totaling 50 or more employees, suffered an employment loss as a result of that Mass Layoff.

142. Walker and the North Central Texas Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Mass Layoff. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Walker and the North Central Texas Class Members were employees of Defendant who did not receive the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Mass Layoff made the subject matter of Walker's claims in this lawsuit.

### 2. North Central Texas Yard Plant Closing

143. Pleading in the alternative, and on information and belief, with the number of drilling rigs stacked within 30 days or 90 days of Walker's employment loss, Walker and the

North Central Texas Class Members suffered a "Plant Closing." 20 C.F.R. §§639.3(b) & 639.5(a)(ii). "Plant Closing" means the "permanent or temporary shutdown of a 'single site of employment', or one or more 'facilities or operating units' within a single site of employment, if the shutdown results in an 'employment loss' during any 30-day period at the single site of employment for 50 or more employees, excluding any part-time employees." 20 C.F.R. § 639.3(b). Accordingly, each drilling rig operating at/from/through the single site of employment for Walker and the North Central Texas Class Members was an operational unit of that single site of employment. 20 C.F.R. § 639.3(j).

144. Walker and the North Central Texas Class Members are aggrieved and affected employees under the WARN Act in connection with Defendant's Plant Closing made the subject matter of Walker's claims in this lawsuit. 29 U.S.C. § 2101(5); 20 C.F.R. § 639(e). Walker and the North Central Texas Class Members were employees of Defendant who did not received the written notice required by 29 U.S.C. § 2102 and were reasonably expected by Defendant and/or should have been reasonably expected by Defendant to experience an employment loss as a result of Defendant's Plant Closing made the subject matter of Walker's claims in this lawsuit.

**3.     No Written Notice of Mass Layoff or Plant Closing**

145. Walker and the North Central Texas Class Members were not provided with 60 calendar days' advance written notice by Defendant of their planned/upcoming termination of employment, Mass Layoff or Plant Closing.

146. Walker and the North Central Texas Class Members were not provided with any written notice by Defendant prior to their termination of employment, Mass Layoff or Plant Closing.

147.     Walker and the North Central Texas Class Members were not provided with written notice, at any time prior to their employment loss, of each and every of the following items in connection with their employment loss, Mass Layoff or Plant Closing: (a) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;  (b) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated; (c) An indication whether or not bumping rights exist; (d) The name and telephone number of a company official to contact for further information.

148.     On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(e) in connection with the Mass Layoff or Plant Closing made the subject matter of Walker's claims in this lawsuit.

149.     On information and belief, Defendant did not notify the Texas agency responsible for dislocated workers with the notice provisions required by 29 U.S.C. § 2102(a) and 20 C.F.R. § 639.7(e) in connection with the termination of the employment loss of Walker and the North Central Texas Class Members.

### 4.     Damages

150.     As a result of Defendant's violations of the WARN Act, Walker and the North Central Texas Class Members have suffered damages. Walker and the North Central Texas Class Members seek all damages available to them in connection with the claims set forth in this lawsuit, including 60 days' wages and benefits as provided by the WARN Act. 29 U.S.C. § 2104.

### V.     CLASS ACTION ALLEGATIONS

151. Plaintiffs incorporate the preceding paragraphs by reference as if set forth fully in this section.

152. Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23(a), (b)(1) and (3) and the WARN Act 29 U.S.C. § 2104(a)(5).

**A.**    <u>**San Antonio Class**</u>

153. Sisney brings this action on behalf of himself and all other similarly situated employees. Sisney seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its San Antonio Yard single site(s) of employment for its drilling operations who experienced an employment loss during the 30 or 90 day period from December 19, 2014 without 60 days' advance written notice required by the WARN Act." Sisney requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification.

154. Sisney and the San Antonio Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

155. Sisney's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

156. On information and belief, the San Antonio Class Members exceed 220 in number, and joinder is therefore impracticable. The precise number of San Antonio Class Members and their addresses are readily determinable from Defendant's records.

157. There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to

the class arising from Defendant's actions/omissions include, but are not limited to, the following:

    a.   Whether the provisions of the WARN Act apply;

    b.   The single site of employment for Sisney and the San Antonio Class Members pursuant to the WARN Act;

    c.   Whether Sisney and the Class Members experienced an employment loss in connection with a "Mass Layoff" or "Plant Closing" under the WARN Act;

    d.   Whether Defendant failed to provide the notices required by the WARN Act;

    e.   Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and

    f.   The appropriate method to calculate damages under the WARN Act.

158.    The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

159.    A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

160.    Sisney is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods

of the WARN Act, 20 C.F.R. § 639.5, without the written notice required by the WARN Act. He is, therefore, a member of the class. Sisney is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Sisney is an adequate representative of the class and has the same interests as all of its members. Further, Sisney's claims are typical of the claims of all members of the San Antonio Class, and Sisney will fairly and adequately protect the interests of the absent members of the class. Sisney and his counsel do not have claims or interests that are adverse to the San Antonio Class Members.

161.    Furthermore, class action treatment of this lawsuit is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

### B.    Woodward Class

162.    Fetters brings this action on behalf of himself and all other similarly situated employees. Fetters seeks to represent a Class initially defined as: "All of Defendant's employees working at/from/through its Woodward Yard single site(s) of employment for its drilling operations who experienced an employment loss during the 30 or 90 day period from January 2, 2015 without 60 days' advance written notice required by the WARN Act." Fetters requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification.

163.    Fetters and the Woodward Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

164. Fetters' claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

165. On information and belief, the Woodward Class Members exceed 220 in number, and joinder is therefore impracticable. The precise number of Woodward Class Members and their addresses are readily determinable from Defendant's records.

166. There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

    a. Whether the provisions of the WARN Act apply;

    b. The single site of employment for Fetters and the Woodward Class Members;

    c. Whether Fetters and the Woodward Class Members experienced an employment loss in connection with a "Mass Layoff" or "Plant Closing" under the WARN Act;

    d. Whether Defendant failed to provide the notices required by the WARN Act;

    e. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and

    f. The appropriate method to calculate damages under the WARN Act.

167. The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

168.     A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

169.     Fetters is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the written notice required by the WARN Act. He is, therefore, a member of the class. Fetters is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Fetters is an adequate representative of the class and has the same interests as all of its members. Further, Fetters' claims are typical of the claims of all members of the Woodward Class, and Fetters will fairly and adequately protect the interests of the absent members of the class. Fetters and his counsel do not have claims or interests that are adverse to the Woodward Class Members.

170.     Furthermore, class action treatment of this lawsuit is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

C.     **North Central Texas Class**

171.     Walker brings this action on behalf of himself and all other similarly situated employees. Walker seeks to represent a Class initially defined as: "All of Defendant's employees

working at/from/through its Woodward Yard single site(s) of employment for its drilling operations who experienced an employment loss during the 30 or 90 day period from January 13, 2015 without 60 days' advance written notice required by the WARN Act." Walker requests the opportunity to expand, narrow or modify the class definition pursuant to a motion for class certification.

172.    Walker and the North Central Texas Class Members are "affected employee(s)" subject to an "employment loss," as those terms are defined in the WARN Act at 29 U.S.C. § 2101(a)(5) and (6).

173.    Walker's claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

174.    On information and belief, the North Central Texas Class Members exceed 110 in number, and joinder is therefore impracticable. The precise number of North Central Texas Class Members and their addresses are readily determinable from Defendant's records.

175.    There are common questions of fact and law as to the class that predominate over any questions affecting only individual class members. The questions of law and fact common to the class arising from Defendant's actions/omissions include, but are not limited to, the following:

    a.   Whether the provisions of the WARN Act apply;

    b.   The single site of employment of Walker and the North Texas Class Members pursuant to the WARN Act;

    c.   Whether Walker and the North Central Texas Class Members experienced an employment loss in connection with a "Mass Layoff" or "Plant Closing" under the WARN Act;

d. Whether Defendant failed to provide the notices required by the WARN Act;

e. Whether Defendant can avail itself of any provisions of the WARN Act permitting lesser periods of written notice; and

f. The appropriate method to calculate damages under the WARN Act.

176. The questions above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the WARN Act claims.

177. A class action is the superior method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the class. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

178. Walker is an affected former employee of Defendant who experienced an employment loss during the relevant 30 day and 90 day "look ahead" and "look behind" periods of the WARN Act, 20 C.F.R. § 639.5, without the written notice required by the WARN Act. He is, therefore, a member of the class. Walker is committed to pursuing this action and has retained counsel with extensive experience in prosecuting complex wage, employment, and class action litigation. Accordingly, Walker is an adequate representative of the class and has the same interests as all of its members. Further, Walker's claims are typical of the claims of all members of the North Central Texas Class, and Walker will fairly and adequately protect the interests of

the absent members of the class. Walker and his counsel do not have claims or interests that are adverse to the North Central Texas Class Members.

179.    Furthermore, class action treatment of this lawsuit is authorized and appropriate under the WARN Act, 29 U.S.C. § 2104(a)(5), which provides that a plaintiff seeking to enforce liabilities under the Act may sue either on his or her behalf, for other persons similarly situated, or both.

## VI.    <u>JURY DEMAND</u>

180.    Plaintiffs demand a jury trial.

## VII.    <u>DAMAGES AND PRAYER</u>

181.    Plaintiffs ask that they and the Class Members be awarded a judgment against Defendant and/or order(s) from the Court for the following:

  a. An order certifying that the claims of Sisney, Fetters, and Walker, and the San Antonio Class, Woodward Class and North Central Texas Class may be maintained as class actions under Federal Rule of Civil Procedure 23;

  b. Designation of Allen R. Vaught, Baron & Budd, P.C. as Class Counsel for all classes;

  c. All damages allowed by the WARN Act, including back pay and benefits as provided by 29 U.S.C. § 2104;

  d. Pre-judgment and post-judgment interest;

  e. Costs;

  f. Reasonable attorney's/attorneys' fees; and

  g. All other relief to which Plaintiffs and the Class Members are entitled.

Respectfully submitted,

By: <u>s/ Allen R. Vaught</u>
   Allen R. Vaught
   Attorney-In-Charge

TX Bar No. 24004966
MS Bar No. 101695
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile
avaught@baronbudd.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

On November 19, 2015, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically.

By:___s/Allen R. Vaught_____
        Allen R. Vaught