# Exhibit A

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD R. SISNEY, JR., FRANK FETTERS and RYAN WALKER, On Behalf of Themselves and All Others Similarly Situated,<br>Plaintiffs,<br><br>v.<br><br>TRINIDAD DRILLING, LP,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:15-cv-132-OLG |

### AFFIDAVIT OF CARLTON CAMPBELL

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

**BEFORE ME,** the undersigned authority, on this day personally appeared Carlton Campbell, being by me duly sworn, upon his oath deposed and stated as follows:

1. My name is Carlton Campbell. I am over the age of twenty-one and am fully able and competent to make this affidavit. I make this affidavit upon my personal knowledge, and all statements contained herein are true and correct.

2. I am the Vice President of Operations for Trinidad Drilling, LP ("Trinidad"), the Defendant in the lawsuit referenced above (the "Lawsuit").

3. Trinidad owns and operates drilling rigs ("Rigs") which are used to provide drilling services for customers that own oil and gas leases and/or drilling rights in various states, including Oklahoma and Texas.

4. Each Rig is managed by a Rig Manager (a/k/a Tool Pusher), who directly supervises and assigns work to a complement of subordinate employees that include Drillers, Derrickhands, Motorhands and Floorhands. In the absence of the Rig Manager, the Driller

manages the Rig, and directly supervises and provides work assignments to the Derrickhands, Motorhands and Floorhands.

5. Each Rig is treated as a separate cost/profit center, and maintains its own dedicated equipment and supplies. Equipment and supplies are not borrowed or shared between Rigs. Rather, each Rig Manager monitors and replenishes, as needed, the Rig's equipment and supplies by directly ordering what is needed from a third party vendor, and then paying the vendor with a company credit card that is provided to the Rig Manager to use for that purpose. Among other things, each Rig calculates and pays its own ad valorem and other taxes.

6. Employees assigned to a Rig are divided into two shifts, with each shift divide into a day crew and a night crew. Thus, there are 4 crews assigned to each Rig. The employees on each shift work a rotating schedule of 14 days on duty, followed by 14 days off duty. Within each shift, the employees on each crew work a rotating schedule of 12 hours on duty followed by 12 hours off duty.

7. Depending upon several factors, the total complement of employees assigned to, and working on, a Rig can vary from as few as 13 to as many as 26. These numbers include both crews on both shifts. In no instances does a Rig have as many as 50 employees assigned to it.

8. Employees are permanently assigned to specific Rigs, and are not shared or borrowed between Rigs. However, employees can be reassigned from one Rig to another Rig in two circumstances. First, if an employee is promoted to a higher position, and there is not an opening for that position on his assigned Rig, but there is an opening for that position on another Rig, the employee is allowed to transfer to the Rig that has the opening. Second, if a Rig loses an employee, and cannot fill that position from the existing crews assigned to that Rig, or by hiring a new employees, and there is an employee on another Rig who is both capable of

performing the position and can be replaced on his current Rig, the employee may be transferred to the Rig that has an opening. In both instances, the employee is permanently reassigned to the Rig that has the opening; not borrowed from or shared with the Rig to which he was previously assigned.

9. Each of the Plaintiffs in this Lawsuit is now a former employee of Trinidad who was previously assigned to a specific Rig. In particular:

> (a) Mr. Sisney was assigned to and worked on Rig 123 from the commencement of his employment on September 10, 2013 until he was laid off on or about December 19, 2014. He worked as a Floorhand on the day crew, and he was supervised and directed by Rig Manager Christopher Scott Williams and Driller Gregory Stephenson. Including Mr. Sisney, a total of 32 employees worked on Rig 123.
>
> (b) Mr. Fetters was assigned to and worked on Rig 206 from the commencement of his employment on November 21, 2014 until he was laid off on or about January 2, 2015. He worked as a Driller on the day crew, and he was supervised and directed by Rig Manager Conrad Cody Brown. Including Mr. Fetters, a total of 22 employees worked on Rig 206.
>
> (c) Mr. Walker was assigned to and worked on Rig 111 from the commencement of his employment on August 29, 2014 until he was laid off on or about January 13, 2015. He worked as a Motorhand on the day crew, and he was supervised and directed by Rig Manager Robin Gould and Driller Hector Chaparro. Including Mr. Walker, a total of 22 employees worked on Rig 111.

10. None of the three Plaintiffs in this case was ever promoted or reassigned from one Rig to another Rig.

11. When in service, each Rig is physically moved to and assembled on the site where drilling services are to be provided. Depending upon the nature of the services to be provided, the Rig will remain on that location for as little as 1 week to as long as 12 weeks. Once a job is completed, the Rig is disassembled and physically moved to and reassembled on the next site where drilling services are to be provided. If no work is available for a Rig, then the Rig is taken

out of service, and physically moved to and stored at a secure location, and the employees assigned to that Rig are laid off.

12.  In the Summer and Fall of 2014, there was sufficient demand for Trinidad's drilling services to keep all of its roughly 50 Rigs busy with work. However, by December of 2014, a drop in oil prices had caused a corresponding drop in the demand for Trinidad's drilling services, and Trinidad did not have enough work to keep all of its Rigs in use. Thus, Trinidad began taking certain Rigs out of service and laying off the employees assigned to those Rigs, and began reducing the size of the crews assigned to certain Rigs that remained in service.

13.  In December of 2014 and January of 2015, 8 of the 32 employees assigned to Rig 123, including Mr. Sisney, were laid off.

14.  In January of 2015, Rig 206 was taken out of service, and the 22 employees assigned to that Rig, including Mr. Fetters, were laid off.

15.  In January of 2015, Rig 111 was taken out of service, and the 22 employees assigned to that Rig, including Mr. Walker, were laid off.

JULEE RASHEL PATIN-MARSH
Notary Public, State of Texas
My Commission Expires
June 23, 2019

_____
CARLTON CAMPBELL

SUBSCRIBED AND SWORN TO before me on this _8th_ day of February, 2016.

_____
Notary Public in and for the State of Texas

HOU:3579709.1