IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICHARD R. SISNEY, JR., FRANK FETTERS and RYAN WALKER, On Behalf of Themselves and All Others Similarly Situated, <br>   Plaintiffs, <br><br> v. <br><br> TRINIDAD DRILLING, LP, <br>   Defendant. | § § § § § § § § § § § | CIVIL ACTION NO. 5:15-cv-132-OLG |

**TRINIDAD DRILLING, LP'S MOTION TO STRIKE PLAINTIFFS' EVIDENCE AND REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant Trinidad Drilling, LP ("Trinidad"), and files this Motion for Summary Judgment, and would respectfully show the following:

**I. INTRODUCTION**

1. Plaintiffs' Response to Trinidad's Motion for Summary Judgment (the "Response") attempts and fails to raise several issues of material fact. Specifically, Plaintiffs argue that (a) employees and equipment were regularly shared between Trinidad's drilling rigs; and (b) Trinidad's Rigs had a "common operational purpose" because there were mid-level managers known as "superintendents" who provided common management to two or more rigs. However, the evidence submitted by Plaintiffs consists of declarations that are not credible or admissible because they lack a proper foundation in personal knowledge, and even if they were credible, the facts Plaintiffs assert do not make any difference in the analysis of whether the Rigs can be aggregated for single site of employment purposes under the WARN Act. Accordingly, Plaintiff has failed to raise a genuine issue of material fact, and Defendant is entitled to judgment as a matter of law.

1

## II. ARGUMENT AND AUTHORITIES

A.  **Motion to Strike Conclusory Portions of Plaintiffs' Declarations for Lack of Foundation as Being Outside of Plaintiffs' Personal Knowledge.**

2.  Plaintiffs' declarations contain conclusory statements concerning the sharing of equipment and employees, management of the Rigs by so-called "superintendents," the operational relationship between the Yards and the Rigs, and how Trinidad was organized at the macro level. However, the declarations provide no foundation tending to show that such statements are within Plaintiffs' personal knowledge, and this type of knowledge is not within the realm of information to which Plaintiffs would be exposed in their job roles as Roughnecks. Accordingly, Trinidad respectfully requests that statements of this nature, which are specifically identified in **Exhibit A** attached hereto and described below, should be stricken from the evidentiary record.

3.  The Plaintiffs were all "Roughnecks" whose tasks were to "engage in hard manual labor as crew members of a drilling rig." Declaration of Ryan Walker ("Exhibit A to Response"), ¶ 9. As such they have no foundation of personal knowledge concerning how Trinidad managed its supply chain of equipment, how employee transfers between Rigs was conducted on an organizational level, the nature of the relationship between upper or mid-level management and Rig-level management, and the nature of the operational relationship between the Yards and the Rigs. None of the job descriptions given by Plaintiffs in their declarations lays any foundation for how they would have acquired this knowledge given their low-level, manual labor positions.

B.  **Plaintiffs' Statements Concerning the Sharing of Equipment Should Be Stricken for Lack of Foundation.**

4.  Trinidad's operations manager, Carlton Campbell, has testified, "Equipment and supplies are not borrowed or shared between Rigs. Rather, each Rig Manager monitors and

replenishes, as needed, the Rig's equipment and supplies by directly ordering what is needed from a third party vendor, and then paying the vendor with a company credit card that is provided to the Rig Manager to use for that purpose." Exhibit A to Motion, ¶ 4. Plaintiffs attempt to contradict Mr. Campbell's statements by claiming, for example, "if other drilling rigs operating in Trinidad's North Central Texas region had spare parts or equipment, those spare parts or equipment would be sent to our drilling location for use . . . Examples of that spare equipment I recall being shared amongst drilling rigs in Trinidad's North Central Texas region include pump parts and hydraulic cylinders." Exhibit A to Response, ¶ 11. The only position identified in Plaintiffs' declarations concerning equipment inventory is where Walker states, "As a Motorhand," he was "required to report what tools and parts were needed for the drilling rig so that they could be ordered." *Id.* Thus, Plaintiffs' have failed to establish that their job duties would have given them any personal knowledge of how Trinidad acquired equipment for the Rigs, and statements of this nature should be stricken and not considered as evidence.

C. **Plaintiffs' Evidence of Sharing Employees Merely Restates Trinidad's Evidence.**

5. Plaintiffs assert in the Response that "drilling rig employees of Trinidad were routinely shared between its drilling rigs in an operational region when a drilling rig was short staffed." Response, p. 7. Plaintiffs' evidence does not support such a statement. In fact, nowhere in Plaintiffs' declarations do any of them state that employees were "shared."

6. In his affidavit, Mr. Campbell testifies, "Employees are permanently assigned to specific Rigs, and are not shared or borrowed between Rigs." Exhibit A to Motion, ¶ 7. He then clarifies this statement by describing the two situations in which an employee "may be reassigned from one Rig to another Rig." *Id.* at ¶ 7. These situation are: (1) "if an employee is promoted to a higher position, and there is not an opening for that position on his assigned Rig, but there is an opening for that position on another Rig, the employee is allowed to transfer to the

Rig that has the opening" and (2) "if a Rig loses an employee, and cannot fill that position from the existing crews assigned to that Rig, or by hiring a new employees, [sic] and there is an employee on another Rig who is both capable of performing the position and can be replaced on his current Rig, the employee may be transferred to the Rig that has an opening." Exhibit A to Motion, ¶ 8. Mr. Campbell further testifies that employees may also transfer between Rigs "in the case of a promotion to a higher position" where there is an opening for that position on another Rig. *Id.* In both instances, however, "the employee is permanently reassigned to the Rig" as opposed to being borrowed or shared between the Rigs. *Id.*

7. Plaintiffs' evidence merely parrots the testimony of Mr. Campbell. For example, Plaintiff Walker's Declaration states:

> If a particular drilling rig operating through the Springtown Yard was short an employee on a particular job position, then employees from other rigs, mainly those who were not working a hitch, were sent to work on that drilling rig. I recall employees from various drilling crews coming to work with my drilling crew when we were short-handed. Furthermore, promotions from one position to another, such as Motorhand to Derrickhand, sometimes involved Roughnecks working on different drilling rigs of Trinidad that operated through the Springtown Yard in the North Central Texas Region.

Declaration of Ryan Walker ("Exhibit A to Response"), ¶ 15.[1]

8. Reassigning an employee from one Rig to another is not tantamount to sharing employees for the purposes of the WARN Act. In the *Frymire* case, the Tenth Circuit noted that "even assuming transfers [from one work site to another] did occur frequently, we certainly cannot equate this phenomenon with the 'shifting,' 'rotating,' or even 'sharing' of employees

---

[1] In addition, Plaintiff Sisney's Declaration states, "It was also common for employees of Trinidad to be shifted between the various drilling rigs operating under the San Antonio yard. The reasons varied from employees not showing up for work, and employees who were not working a hitch being called in to work to employees being promoted and going to another rig." Declaration of Richard Sisney, Jr. ("Exhibit B to Response"), ¶ 8; *see also* Declaration of Frank A. Fetters, III ("Exhibit C to Response"), ¶ 4.

that presumable defines a non-'separate' workforce." *Frymire v. Ampex Corp.*, 61 F.3d 757, 767 (10th Cir. 1995). The DOL regulations also state:

> (3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment. An example is an employer who manages a number of warehouses in an area but who **regularly** shifts or rotates the same employees from one building to another.
>
> (4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site. For example, assembly plants which are located on opposite sides of a town and which are managed by a single employer are separate sites if they employ different workers.

20 C.F.R. § 639.3(i) (emphasis added).

9. The apparent point of law articulated by the Tenth Circuit and the regulations is that transfers of employees from one work site to remedy staff shortages caused by accidents and other unforeseen events or to allow for a promotion is different from the regular sharing, shifting, or rotation of employees between sites that is required to aggregate non-contiguous sites for WARN Act purposes. There was nothing regular about the transfer of employees described by Mr. Campbell or by the Plaintiffs. Rather, such transfers were on an as-needed basis. Furthermore, once a transfer occurred, then that employee was permanently assigned to that particular Rig unless and until a further staff shortage necessitated a further reassignment or an opportunity for promotion arose. Such an arrangement is merely a characteristic of the Rigs being under common ownership while maintaining separate workforces. It does not weigh in favor of aggregating multiple rigs for WARN Act purposes.

**D.     Plaintiffs' Statements in the Response Concerning the Role of Superintendents Are Not Supported by Plaintiffs' Evidence and Do Not Show that the Rigs Should Be Aggregated for WARN Act Purposes.**

Page 5 of 11
HOU:3644982.1

10. In the Response, Plaintiffs assert that superintendents are "mid-level managers responsible for the day-to-day operations of multiple Trinidad drilling rigs at any given time." Response, p. 6. Yet, the only "day-to-day" operation identified in the Response allegedly "managed" by the superintended is "coordinating parts and equipment on the various rigs they managed." *See id.* Not only is this statement is not supported by Plaintiffs' evidence, but even if it were, it would not show that the Rigs should be aggregated for WARN Act purposes.

11. Walker states in his Declaration, "There was a Drilling Superintendent[2] who was based from that Springtown Yard who managed the drilling rig operations in the North Central Texas region of Trinidad." Exhibit A to Response, ¶ 6. Yet, Walker did not testify to a single "day-to-day" operation of a Rig for which this superintendent was responsible. Similarly, Sisney states that there was a "Drilling Superintendent who managed several drilling rigs of Trinidad on a daily basis," and Fetters states that "Trinidad's drilling superintendents managed a certain number of drilling rigs operating through the Woodward Yard." Exhibit B to Response, ¶ 6; Exhibit C to Response, ¶ 6. The only activity that any of the Plaintiffs actually identify in regards to a superintendent is that "Drilling Superintendents and Rig Managers frequently delivered equipment and supplies to the Trinidad Drilling rigs . . . ." Exhibit A to Response, ¶ 7.

12. In fact, drilling superintendents are not delivery persons but, even assuming that superintendents did frequently deliver equipment and supplies, such evidence in no way equates to management of the "day-to-day operations" of the Rigs. Plaintiffs have put forth no evidentiary foundation to support their conclusory statements that superintendents managed the day-to-day operations of the rigs or in what capacity the superintendents managed the rigs.

---

[2] Walker claims this superintendent's name is "George" but does not recall his last name. Exhibit A to Response, ¶ 6.

13. Such conclusory statements that superintendents "managed" the Rigs should not only be stricken from the record, but they do not weigh in favor of aggregating the Rigs for WARN Act purposes. In order to weigh in favor of aggregating the Rigs, the superintendent must have been responsible for the daily operations of the rig such as giving daily work assignments, otherwise it is merely evidence of common ownership or control by a common employer. *See, e.g.*, *Bader v. Northern Line Layers, Inc.*, 503 F.3d 813, 820 (9th Cir. 2007); *Int'l Union, United Mine Workers v. Jim Walter Res., Inc.*, 6 F.3d 722, 725 (11th Cir. 1993); *Voisin v. Axxis Drilling, Inc.*, CIV.A. 15-571, 2015 WL 6438918, at *4-5 (E.D. La. Oct. 21, 2015); *Carpenters District Council v. Dillard Department Stores, Inc.,* 790 F. Supp. 663, 667 (E.D. La. 1992). Mr. Campbell has already testified that day-to-day management is the responsibility of the Rig Manager and Driller. Exhibit A to Motion, ¶ 3. By Plaintiffs' own admission, the superintendent traveled around to different Rigs so it would, therefore, be highly impractical for the superintendent to be the person responsible for day-to-day management. Regardless, Plaintiffs' evidence relating to superintendents does not weigh in favor of aggregating the Rigs.

**E.     Plaintiffs' Conclusory Statements Concerning the Role of the Yards Should Be Stricken for Lack of Foundation as Outside Plaintiffs' Personal Knowledge.**

14. Mr. Campbell has testified, "Each Rig is treated as a separate cost/profit center, and maintains its own dedicated equipment and supplies." Exhibit A to Motion, ¶ 4. Plaintiffs again make conclusory statements in an attempt to characterize the Rigs as being assigned to certain Yards and even that Rig employees were assigned to the Yard. Such statements are not within the scope of personal knowledge of a "Roughneck" level employee and should be stricken from the record.

15. Plaintiff Walker testifies that the "Springtown Yard" was his "assigned rig yard" and states "I considered that Springtown Yard my home base as it was the management and

supply hub for drilling rigs operating in Trinidad's North Central Texas Region." Exhibit A to Response, ¶ 4. He also states that "Trinidad had dozen of drilling rigs which were operated in connection with various regional operational offices, or rig yards." *Id.* at ¶ 3. With regard to the Springtown Yard he states that five Rigs "operated from and through the Springtown Yard" and that the Springtown Yard provided "operational support, including supplies and equipment" to Rigs operating in the region. *Id.* The other two declarants make similar statements. *See* Exhibit B to Response, ¶¶ 2, 6, 7, 8; Exhibit C to Response, ¶¶ 3, 4.

16. First, this notion that Rig employees were "assigned" to a Yard or that the Yard was their "home base" is patently unreliable. The Plaintiffs themselves testify that all of their job duties took place on the Rigs not the Yards. *See* Exhibit A to Response, ¶¶ 9–13 ("as a Roughneck employee, I did manual labor on the drilling rig"); Exhibit B to Response, ¶ 3. Neither were Rigs "assigned" to certain Yards. Plaintiffs are trying to paint the picture that several Rigs and a nearby Yard shared common management and operational purpose, but that is simply not the case. Each Rig was its own separate cost/profit center, not, as Plaintiffs claim, part of a number of Rigs assigned to a Yard. *See* Exhibit A to Motion, ¶ 5. The nature of Plaintiffs' manual labor work duties as Roughnecks on the Rigs would not have provided any of the organizational knowledge that Plaintiffs claim to have regarding the operational relationship between the Rigs and the Yard. Therefore, Plaintiffs' testimony in that regard should not be considered as evidence and should be stricken.

**F.**  **Whereas the Rigs Are Not Geographically Contiguous, Employees and Equipment Are Not Regularly Shared, and the Day-to-Day Operations Are Managed on the Rigs, Trinidad's Cited Authority Establishes that Each Rig Is Its Own "Single Site of Employment."**

17. As set forth in the Motion and authorities cited therein, because the Rigs are clearly not geographically contiguous, the only way they can be aggregated under the WARN

Act is if they regularly share employees and equipment and have common day-to-day management.³ Plaintiffs have failed to put forth competent evidence to refute Mr. Campbell's testimony that employees and equipment were not regularly shared and that day-to-day management was the responsibility of the Rig Manager and the Driller.

18. Even though it is axiomatic that federal courts can rely on persuasive non-binding authority in the absence of binding authority, Plaintiffs make much of the fact that few cases within the Fifth Circuit have been decided on the single site of employment question but, at the same time, they fail to effectively distinguish the only case that has actually been decided in the context of drilling rigs—a case decided by a court within the Fifth Circuit. Contrary to Plaintiffs' arguments, the *Voisin* case is quite similar to the facts at issue here. Even more detrimental to Plaintiffs' argument is that some facts of the *Voisin* case are actually more similar to some of the facts Plaintiffs claim exist here with regard to the Yards and the superintendents.

19. In *Voisin* the evidence showed that the superintendent for the defendant's rigs "worked out of" the administrative office "but routinely visited with each rig . . . . each [rig] was in daily communication with the managers at the Axxis office." *See Voisin v. Axxis Drilling, Inc.*, CIV.A. 15-571, 2015 WL 6438918, at *1 (E.D. La. Oct. 21, 2015). Furthermore, the evidence in *Voisin* showed that the administrative office handled the ordering and delivery of parts to each of the offshore rigs. *Id.* These two facts are exactly what Plaintiffs incorrectly claim the facts to be in this case. Yet, even assuming Plaintiffs' declaration testimony had a proper foundation in personal knowledge, in *Voisin*, these same facts did nothing to establish a common operational purpose or the regular sharing of equipment for purposes of the single site

---

³ Plaintiffs attempt to argue in the Response that Trinidad is wrong in asserting that sites which are not in geographic proximity cannot be aggregated. *See* Response, pp. 4, 11–13. But Trinidad has never asserted this. Trinidad's position, according to the DOL regulations and cases cited in the Motion, is that non-contiguous sites or sites that are not in geographic proximity can only be aggregated if they regularly share employees and equipment and have a common operational purpose.

analysis. *See id.* at *4. Where each rig (1) maintained its own "independent operations," (2) "had its own employees who reported for duty wherever the rig was located," and (3) "the daily work assignments for the rig employees were delegated onboard the rig," the rigs could not be aggregated with each other or with the office for purposes of the single site analysis under the WARN Act. *See id.* at *4–5.

20. Plaintiffs claim that the "present case presents a very different situation as it involves land based drilling rigs operating under common management and support based on operational regions surrounding three distinct regional rig yards . . . ." As demonstrated above, however, *Voisin* involved common management (but not day-to-day direction of work assignments) by a superintendent and support based from the administrative office. The only remaining distinction would be the fact that the rigs in *Voisin* were in the water, but Plaintiffs offer no reasonable explanation as to why the state of matter of the surface of the location for the facilities has any relevance to the single site analysis.

21. *Voisin* and the other cases and regulations cited in the Motion concerning non-contiguous facilities establish that Trinidad's Rigs cannot be aggregated because they do not regularly share employees or equipment and do have common management of day-to-day operations. Moreover, none of the analogous cases cited in Trinidad's Motion treated the various sites as a "Plant Closing" within the meaning of 20 C.F.R. §§ 639.3(b) & 639.3(j) or as a "truly unusual organizational situation" pursuant to 20 C.F.R. § 639.3(i)(8), and neither can Plaintiffs offer any evidence that there is reason to do so in this case. Accordingly, Plaintiffs have failed to raise a genuine issue of material fact, Trinidad is entitled to judgment as a matter of law.

WHEREFORE**,** Defendant Trinidad Drilling, LP prays this Court grant the relief requested herein and in the Motion for Summary Judgment and grant all other proper relief.

HOU:3644982.1

Respectfully submitted,

ANDREWS KURTH LLP


By: /s/ *J. Marshall Horton*
    Matthew L. Hoeg (Attorney In Charge)
    State Bar No. 09772880
    J. Marshall Horton
    State Bar No. 24029095
    Paul M. Davis
    State Bar No. 24078401
    600 Travis, Suite 4200
    Houston, Texas 77002
    713.220.4024    Direct
    713.238.5002    Direct Facsimile
    mhoeg@andrewskurth.com
    marshallhorton@andrewskurth.com
    pauldavis@andrewskurth.com

ATTORNEYS FOR DEFENDANT
TRINIDAD DRILLING, LP


## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 2, 2016, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court for the Western District of Texas, by using the CM/ECF system, and that service will be accomplished by the CM/ECF system to the following counsel for Plaintiffs:

Allen R. Vaught
Melinda Arbuckle
Baron & Budd, P.C.
3102 Oak Law Ave., Suite 1100
Dallas, Texas 75219

    /s/ *Paul M. Davis*
    Paul M. Davis

Page 11 of 11
HOU:3644982.1