FILED

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

JAN 3 0 2017

CLERK, U    DISTRICT CLERK
WESTERN    STRICT OF TEXAS
BY_____
_____

|  |  |
|---|---|
| RICHARD R. SISNEY JR., FRANK FETTERS, and RYAN WALKER, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiffs | ) |
|  | ) Civil Case No. 15-cv-132 (RCL) |
| v. | ) ) |
| TRINIDAD DRILLING, LP, | ) |
| Defendant | ) ) |

## <u>MEMORANDUM OPINION</u>

### I.    INTRODUCTION

Plaintiffs brought this action against Trinidad Drilling, LP, their former employer, pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101-2109 (WARN Act). Before this Court is defendant Trinidad Drilling LP's Motion [ECF No. 15] for Summary Judgment, plaintiffs' Response [ECF No. 16], and defendant's Reply [ECF No. 17]. Defendant's Reply also contained a Motion [ECF No. 17] to Strike. Plaintiffs' Response [ECF No. 21] was timely filed, and defendant did not reply. For the reasons discussed below, this Court will **GRANT** the Motion for Summary Judgment and **DENY** the Motion to Strike as moot.

### II.    BACKGROUND

Trinidad Drilling, LC owns and operates drilling rigs that provide drilling services on oil and gas leases in various states, including Texas and Oklahoma. Depending on the region, a rig yard might consist of dozens of drilling rigs. Walker Decl. [ECF No. 16-1] ¶3. According to defendants, each rig had the same positions, and it was common for personnel and equipment to shift between rigs. Walker Decl. ¶15; Sisney Decl. 3, ¶¶7-8; Fetters Decl. ¶¶4-5. Further, each rig appears to

1

have been managed by rig manager and a Superintendent. Walker Decl. ¶¶6-7; Sisney Decl. ¶6; Fetters Decl. ¶ 6. Superintendents were above rig managers and responsible for multiple rigs within a yard or region. *Id.* Managers were assigned to a particular drilling rig, and managed the "roughneck" positions below them. The plaintiffs here were roughnecks, not in upper management positions, and were never reassigned from their rig to another.[1]

This action focuses on layoffs at drilling rigs that are located in or around (1) San Antonio, Texas, (2) Woodward, Oklahoma, and (3) North Central Texas. Plaintiffs worked for Trinidad Drilling on several drilling rigs but were laid off between December 2014 and January 2015.[2] Specifically, Trinidad Drilling reduced the crew assigned to Rig 123—laying off 8 employees— and took Rig 206 and Rig 111 out of service entirely—terminating the 22 employees working at each rig. Plaintiffs did not receive any written notice prior to their termination. It is undisputed that less than 50 persons were employed at each rig. *See* Campbell Affidavit 3, ¶7 [ECF No. 15-1] ("In no instances does a Rig have as many as 50 employees assigned to it.").

Plaintiffs filed suit, alleging that their terminations were in violation of the WARN Act. The WARN Act requires employers who employ over 100 employees to give 60 days advanced written notice before ordering a plant closing or mass layoff at a single site of employment. *See* 28 U.S.C. § 2101(a). Plaintiffs' complaint alleges that that the termination of Trinidad employees here

---

[1] Roughnecks refers to the manual labor positions on a drilling rig, usually drillers, derrickhands, motorhands, and floorhands. Ryan Walker worked as a motorman and a derrickhand, monitoring and repairing equipment, motors, and mud circulation pumps on his rig. Walker Decl. ¶¶11-12. Richard Sisney worked as a floorhand, helping to move, connect, and disassemble pipes and assisting derrickhands with drilling equipment. Sisney Decl. ¶3. Frank Fetters worked as a driller and assistant driller in directing drilling operations on his rig. Fetters Decl. ¶3.

[2] Richard Sisney worked on Rig 123 in the San Antonio Yard, which consisted of "many drilling rigs" in the Eagle Ford Shale. Sisney Decl. ¶2; Campbell Aff. 4, ¶9. His rig was put out of service, and he was laid off, around December 19, 2014. *Id.* Frank Fetters worked on Rig 206 in the Woodward Oklahoma Yard, which consisted of "five to seven drilling rigs" in the Anadarko Basin. Fetters Decl. ¶3. Ryan Walker worked on Rig 111 in the Springtown Yard, which consisted of approximately five drilling rigs in the North Central Texas region. Walker Decl. ¶4; Campbell Aff. 4, ¶9. His rig was put out of service, and he was laid off, in January 2015. Walker Decl. ¶ 5; Campbell Aff. 4, ¶9.

occurred at single sites of employment in violation of the WARN Act. *See* Am. Compl. 1 [ECF No. 13]. Plaintiffs have alleged the terminations took place at three separate "single sites" within the requirements of the WARN Act: sites in San Antonio, Woodward, and North Central Texas. *Id.* at 3-7.

Trinidad Drilling filed a Motion for Summary Judgment on the applicability of the WARN Act. Specifically, Trinidad Drilling argues that the drilling rigs should not be considered collectively as "single sites of employment" within a geographic area. Def.'s Mot. 8 [ECF No. 15]. In other words, the rigs themselves are single sites of employment, but the plaintiffs cannot combine those sites to create a large single site based on a geographic region. According to Trinidad Drilling, if the regions are not separate single sites of employment, the layoffs at issue did not require 60-day advance written notice under the WARN Act. *Id.* at 15. Plaintiffs oppose summary judgment, contending that genuine issues of material fact exist as to whether the rigs may be aggregated into single sites. Pls.' Opp'n 6-9 [ECF No. 16]. In short, plaintiffs argue that the evidence presented would allow a reasonable jury to find that the geographic regions—rather than the individual rigs—were single sites of employment under the WARN Act.

### III.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party bears the burden of establishing the lack of a genuine absence of material fact. *Id.* A fact is material if it could affect the outcome of a case. *Id.* A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party demonstrates a lack of an issue of material fact, the burden

passes to the nonmoving party. To survive summary judgment, a nonmoving party must present specific facts or evidence that would allow a reasonable factfinder to find in his favor on a material issue. *Id.* However, merely asserting a factual dispute or conclusory denials of the allegations raised by the moving party is insufficient; the nonmoving party must come forward with competent evidence. *Id.* at 249-250. The nonmoving party may set forth specific facts by submitting affidavits or other evidence that demonstrates the existence of a genuine issue. *Id. See also* Fed. R. Civ. P. 56(c). Competent evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in her favor. *Id.*

Under the WARN Act, employers must provide 60-day notice to workers before a "plant closing" or "mass layoff." 29 U.S.C. § 2102(a). An employer who fails to provide such notice is liable for back pay, lost benefits, civil penalties, and attorneys' fees. *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1127 (5th Cir. 1997) (citing 29 U.S.C. § 2104). The WARN Act defines a "plant closing" as "the permanent or temporary shutdown of a *single site of employment*, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees[.]" 29 U.S.C. § 2101(a)(2) (emphasis added). "Mass layoff" is defined as "a reduction in force which . . . results in an employment loss at the *single site of employment* during any 30-day period for at least 33 percent of the employees . . . and at least 50 employees." 29 U.S.C. § 2101(a)(3) (emphasis added).  Therefore, recovery under the WARN Act for a mass layoff or plant closing is predicated on the loss of employment occurring at a single site of employment. That loss of employment must also involve 50 or more employees.

The WARN Act does not define "single site of employment," but Department of Labor regulations do. *See* 20 C.F.R. § 639.3(i). The regulations provide:

(1) A single site of employment can refer to either a single or a group of contiguous locations . . .

(3) Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purposes, and share the same staff and equipment . . .

(4) Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site . . .

(5) Contiguous buildings owned by the same employer which have separate management, produce different products, and have separate work forces are considered separate sites of employment . . .

(6) For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

(8) The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The applications of this definitions with the intent to evade the purpose of the Act to provide notice is not acceptable.

*Id.*

In the Fifth Circuit, the general rule is that "separate facilities are separate sites." *Davis v. Signal Intern. Texas GP, LLC*, 728 F.3d 482, 485 (5th Cir. 2013) (citing 54 Fed.Reg. 16042, 16050 (Apr. 21, 1989) and *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1127 (5th Cir. 1997)). "[S]eparate facilities are only to be treated as a single site of employment if all three factors identified in [20 C.F.R. § 639.3(i)(3)] are met, namely: 1) the separate facilities are in reasonable geographic proximity of one another; 2) they are used for the same purpose; 3) and they share the same staff and equipment." *Viator*, 109 F.3d at 1127.

## IV.    ANALYSIS

The critical question before this Court is whether Trinidad Drilling's rigs should each be considered single sites of employment or if the rigs in three geographic regions—San Antonio, Texas, Woodward, Oklahoma, and North Central Texas—should be considered collectively as three single sites of employment. If the individual rigs are separate sites, all of plaintiffs' claims must fail because less than 50 persons were terminated at each rig.[3] In other words, the aggregation of rigs into a single site of employment is essential to plaintiffs' recovery here.

In their amended complaint, plaintiffs allege that Trinidad Drilling failed to give required WARN Act written notice in connection with either mass layoffs or plant closings "at single sites of employment in connection with Defendant's (a) San Antonio, Texas, (b) Woodward, Oklahoma, and (c) North Central Texas operational regions." Am. Compl. 1-2. Plaintiffs claim the geographic regions constitute a single site of employment under 20 C.F.R. § 639.3(i)(1), (3), (6), and/or (8). *Id.* at 4-6. Trinidad Drilling, however, argues that "these employees were employed at specific Rigs that were located at geographically distinct drilling sites and that had different managers for day-to-day operations with no regular practice of sharing employees or equipment between Rigs or the Yards." Def.'s Mot. 15.   In short, Trinidad argues plaintiffs' claims fail as a matter of law because the plaintiffs cannot show why the rigs should be considered collectively as a single site. For the reasons discussed below, this Court agrees.

---

[3] Plaintiffs argue that the motion for summary judgment "does not address Plaintiffs' alternate theories of liability" under 20 C.F.R. §§ 639.3(b) & 639.3(j (regarding notice for plant closings) or 639.3(i)(8) (allowing the consideration of "truly unusual organizational situations" as single sites of employment). But under either basis of liability, plaintiffs must show 50 or more employees were affected at a "single site of employment." Thus, the issue raised here—that no notice was required because no single site of employment affected 50 or more employees—touches all of plaintiffs' claims for liability under the WARN Act.

**A. It is undisputed that less than 50 people worked on a Trinidad Drilling rig at any given time.**

As noted, under any basis for liability under the WARN Act, plaintiffs must show that 50 or more employees were affected at a single site of employment. *See* 29 U.S.C. § 2101(a)(2) & (3). Plaintiffs admit that "as many as 26 people worked on Defendant's drilling rigs at any given time." Pls.' Resp. 3. Assuming *arguendo* each rig constitutes a separate single site of employment, less than 50 were terminated at each site. Thus, no jury could reasonably conclude that there were a sufficient number of affected employees to trigger the WARN Act requirements. Accordingly, the Court will grant the motion for summary judgment on plaintiffs' claims to the extent that they assert any of the rigs, on their own, constitute single sites of employment under 20 C.F.R §§ (i)(1) or (4).[4]

**B. Under the general rule, the rigs are separate sites and not single sites of employment under 20 C.F.R. § 639.3(i)(3).**

Separate facilities are only to be aggregated into a single site of employment if all of the 20 C.F.R. § 629.3(i)(3) factors are met. *Viator*, 109 F.3d at 1127. Thus, plaintiffs must show (1) the separate facilities are in reasonable geographic proximity of one another, (2) they are used for the same purposes, and (3) they share the same staff and equipment.

---

[4] Plaintiffs reference in passing to a theory of liability under 20 C.F.R. § 639.3(i)(6), which states:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report will be the single site in which they are covered for WARN purposes.

To the extent plaintiffs assert they are traveling workers because they follow the rig as it moves, they report to, and are assigned work at, the rig. In that instance, the rig would be the single site of employment. Because less than 50 people were employed on each rig, those claims fail.

### a. Plaintiffs have failed to raise a genuine fact issue concerning whether the rigs are in reasonable geographic proximity to one another.

As noted by plaintiffs, "geographic reasonableness is a moving target under limited case law interpreting the WARN Act." Pls.' Resp. 12. Pointing to *United Food and Commercial Workers Union Local No. 72 v. Giant Markets, Inc.*, 878 F. Supp. 700 (M.D. Pa. 1995), plaintiffs argue what constitutes geographic reasonableness depends on the specific facts and circumstances of each case. This is true. Unfortunately, however, the evidence presented here is insufficient to raise a genuine issue of material fact as to geographic reasonableness.

In *United Food,* a court determined the interrelatedness between five supermarkets located between 2.8 miles and 52.1 miles from each other was a fact question. *United Food*, 878 F. Supp. at 703, 709 ("No party [] presented facts pertaining to managerial autonomy, employee rotation, and equipment sharing specific to the five stores in question."). However, there was evidence that detailed the exact distance between the stores. *United Food*, 878 F. Supp. at 704 n.7. Here, there is no such evidence. Plaintiffs argue that the distance between rigs was reasonable "pursuant to the industry standard" because "it is industry standard that rigs are located across great distances." Pls.' Resp. 11-12. But, plaintiffs point to no particular evidence as to oil and gas industry standards and no evidence why the unknown distances between the rigs at issue here might be "reasonable."

According to the affidavits, the North Central Texas region, which included the Springtown Yard, had "[a]pproximately five Trinidad drilling rigs," Walker Decl. ¶ 4, the Woodward, OK region had "approximately five to seven drilling rigs," Fetters Decl. ¶ 3, and the San Antonio region had "many drilling rigs," Sisney Decl. ¶ 2. But there is no reference to the distance between the rigs or the size of the geographic regions at issue here. However, a Court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known within the jurisdiction or can be accurately and readily determines from sources whose accuracy cannot

8

reasonably be questioned. *See* FED. R. CIV. P. 201. The Court takes judicial notice that the oil fields referred to here—the Eagle Ford Shale and the Anadarko Basin—span hundreds, if not thousands, of miles across.[5] Further, the Court takes judicial notice that the regions at issue here are hundreds of miles apart and cross state lines: San Antonio, TX is almost 600 miles from Woodward, OK, the location of the Woodward Region, and 300 miles from Springtown, TX, the location of the North Central Texas Region.

Given the size of the regions at issue here and the lack of information concerning the number or location of the specific rigs to be aggregated, the Court finds that plaintiffs failed to raise a genuine fact issue concerning whether the rigs in the San Antonio region, the Woodward region, and the North Central Texas region are in reasonable geographic proximity to each other under 20 C.F.R. § 639.3(i)(3).

### b. Plaintiffs have failed to raise a genuine fact issue concerning whether the rigs are used for the same operational purpose.

Separate facilities are only to be treated as a single site of employment if all three factors are met. Since the Court finds that plaintiffs failed to raise a genuine issue of material fact as to the geographic reasonableness of the rigs, the Court would not normally address other factors. However, plaintiffs also argued that the unknown distance between the rigs within the geographic regions are reasonable because "[d]efendant had a unified workforce in those regions and because those regions had a common operational purpose." Pls.' Resp. 13. This argument conflates the

---

[5] Railroad Commission of Texas, Eagle Ford Shale Information (2017), http://www.rrc.state.tx.us/oil-gas/major-oil-gas-formations/eagle-ford-shale/ ("The shale play trends across Texas from the Mexican border up into East Texas, roughly 50 miles wide and 400 miles long . . . ."); Department of the Interior, U.S. Geological Survey, Petroleum Geology of the Anadarko Basin Region, Province (115), Kansas, Oklahoma, and Texas (1991), http://pubs.usgs.gov/of/1988/0450w/report.pdf ("The total area of the province is about 58,000 square miles; it's maximum dimensions are about 350 miles north to south and 340 miles east to west.").

§ 629.3(i)(3) factors, but in the name of clarity the Court will consider the operational purpose argument below.

Assuming *arguendo* that an unspecified number of rigs within a geographic region hundreds of miles across raises an issue of material fact as to geographic proximity, plaintiffs also failed to raise a genuine fact issue that the rigs were used for the same operational purpose. Under 20 C.F.R. § 639(i)(4), "non-contiguous sites in the same geographic area <u>which do not share the same staff or operational purpose</u> should not be considered a single site." (emphasis added).

Plaintiffs argue that the rigs within the geographic regions have a common operational purpose: drilling for oil. Pls.' Resp. 16. Although plaintiffs admit that "shared operational purpose" has not been addressed by courts in this Circuit, they urge this Court to focus on the <u>shared management</u> here. Specifically, plaintiffs point to the existence of a group of middle managers called "drilling superintendents" in charge of each geographic region. Pls.' Resp. 19.  For support, plaintiffs point to *Reyes v. Greater Texas Finishing Corp.*, 19 F. Supp. 2d 709 (W.D. Tex. 1998), which held that a laundry and garment finishing business with two buildings near each other may be considered a single site of employment under 20 C.F.R. § 639.3(i)(1) & (5). *Reyes,* 19 F. Supp. 2d at 714-15. The *Reyes* court found that the buildings were contiguous "despite the fact that the buildings [were] across the street from one another" because the buildings were "owned by the same employer, have the same management, work the same products, and frequently share employees." *Id.* at 715.

Reliance on *Reyes* is wholly misplaced here. That holding was based on 20 C.F.R. §§ 639.3(i)(1), which states a single site of employment can refer to a group of contiguous locations or groups of structures across the street from one another, and 639.3(i)(5), which states that contiguous buildings *owned* by the same employer but with *different* management, products, or workforces are single sites of employment. *Id.*  In *Reyes*, the worksites were considered contiguous

in part because plaintiffs offered no supporting argument of evidence that the buildings should be considered separate sites of employment. *Id.* The uncontroverted evidence, therefore, showed the buildings were owned by the same employer, under the same management, making the same products, and sharing the same employees. *Id.* The *Reyes* court therefore determined that the two buildings were a single site of employment. Here, plaintiffs have similarly left the Court wanting for evidence. Plaintiffs' complaints center on an unknown number or location of rigs separated by unspecified distances. There is no evidence suggesting that the rigs should be considered contiguous with other Trinidad Drilling facilities under 20 C.F.R. §§ 639.3(i)(1) or (5), or that they share a common operational purpose, regardless of the shared ownership or management.

Plaintiffs also point to *Brewer v. American Power Source, Inc.*, 291 Fed. Appx. 656 (5th Cir. 2008) (per curiam). In *Brewer*, the Fifth Circuit considered whether a layoff of 102 employees from a factory in Columbus, Mississippi violated the WARN Act when it lacked 60-day notice. *Brewer*, 291 Fed. Appx. at 657. The company tried to argue that these layoffs did not violate the WARN Act because, the layoffs did not constitute "at least 33 percent of the employees" as required by 29 U.S.C. § 2101(a)(3) because the company employed 343 employees in Columbus, Mississippi and Fayette, Alabama. *Id.* at 659. In other words, the company argued that the Columbus and Fayette plants were one single site of employment. *Id.* (noting that the company relied on evidence that the two plants were 40 miles apart, that the Columbus plant was an expansion of Fayette's facilities, that they manufactured the same uniforms under the same contract, and that they shared management and payroll). The *Brewer* plaintiffs presented "very little evidence" in response, arguing only that the plants crossed state lines and did not share the same staff or equipment. *Id.* at 659-60.

11

Again reliance on this unpublished Fifth Circuit opinion is misplaced. While the shared management was certainly a factor in *Brewer*, one that admittedly cuts in the plaintiffs' favor, other important factors are absent. Specifically, in *Brewer* there were only two factories, one of which was an expansion of the other, they were 40 miles apart, and they produced the exact same products under the same contract. *Id.* Here, though, an unknown number of oil rigs are untold miles apart, operating on different oil reservoirs (or at least in different points on those reservoirs), and are likely producing a variety of products under a multitude of oil and gas leases. Further, the *Brewer* plaintiffs "provided no facts" to support the assertions that facilities that crossed state lines could not constitute single sites of employment.[6] The Court is unconvinced that merely pointing to some common management in the form of drilling superintendents is sufficient to establish that each rig had a common operational purpose with every other rig in the field.

Trinidad Drilling argues that cases within this Circuit have addressed whether drilling rigs should be treated collectively as a single site of employment. Mot. 8-9 (citing *Voisin v. v. Axxis Drilling, Inc.*, 141 F. Supp. 3d 670 (E.D. La. 2015). In *Voisin*, a drilling company operated a fleet of floating drilling rigs that were periodically moved to different drilling locations. *Voisin*, 141 F. Supp. 3d at 672. The company also had a headquarters located on a dock. *Id.* That office handled billing, personnel training, scheduling, equipment, etc. *Id.* While two rigs were stacked at the dock, the company laid off 101 employees, and the employees sued for violations of the WARN Act. *Id.* The *Voisin* court dismissed, holding that the rigs maintained independent operations from the office or the other rigs as evidenced by the fact that employees ate, slept, and worked on the rigs even while they were docked. *Id.* at 674. Further, even though a rig manager coordinated with the

---

[6] The Court also noted that plaintiffs failed to even attempt to distinguish *Carpenters District Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.*, 15 F.3d 1275 (5th Cir.1994), a case relief upon by defendants in which two sites, one of which was an expansion of the original site, were held to be a "single site of employment."

office to order supplies and equipment, the rigs were considered to function independently. Because each rig was a separate facility, and because each rig had its own employees, the court considered each rig a "separate site of employment" under the WARN Act.

The Court sees no reason to depart from the analysis articulated in *Voisin*. There is no evidence that the rigs here, wherever and however many there are, share a common operational purpose beyond generically drilling oil for profit. On the contrary, plaintiffs' evidence shows that each rig had its own crew of roughnecks and rig managers who regularly performed duties on the same oil rig with the same crew. *See* Walker Decl. ¶13 ("In summary, as a Roughneck employee, I did manual labor as required *on the drilling rig*.") (emphasis added). That the rig mangers coordinated with regional offices or other rigs to order supplies or equipment is not evidence that the rigs shared a common operational purpose, only that they shared common operational equipment. *See Voisin*, 141 F. Supp. 3d at 672 (refusing to aggregate drillings rigs and a central office into a single site of employment despite the rig managers coordinating with the central office for equipment or parts). Further, testimony that anonymous superintendents delivered supplies to different rigs of unknown location or number is similarly insufficient.

The general rule is clear: "separate facilities are separate sites." *Viator v. Delchamps Inc.*, 109 F.3d 1124, 1127 (5th Cir. 1997)). Separate facilities are only to be treated as a single site of employment if all three factors are satisfied. *Id.* Exceptions to the general rule are "narrow" and limited to cases where geographically distinct sites have an "*inextricable operational purpose*." *Id.* (emphasis added). Plaintiffs here attempt to broaden that standard to "shared management," rather than present more specific evidence as to these rigs and their operational purpose beyond "drilling for oil and/or gas in a specific division for the profit of defendant." Pls.' Resp. at 16. While it is conceivable that some oil rigs, closely linked in proximity, operations, and staff, could

be aggregated into a single site of employment, no specific evidence was presented here linking any two specific rigs. This Court refuses to stretch the statute and regulations here to accommodate an unknown number of rigs in unknown locations across Texas and Oklahoma, particularly when the general rule is "separate facilities are separate sites." Accordingly, the Court finds that plaintiffs failed to raise a genuine fact issue concerning whether the rigs in the San Antonio, TX region, the Woodward, OK region, and the North Central Texas region all have the same inextricable operational purpose under 20 C.F.R. § 639.3(i)(3).

Further, because the plaintiffs have failed under two separate § 639.3(i)(3) factors, the Court need not address the remaining factor of whether the rigs share the same staff and equipment.

### C. There is no evidence that the rigs here are "truly unusual" organizational situations under 20 C.F.R. § 639.3(i)(8).

Plaintiffs make a passing assertion that "Defendant's organization may be a 'truly unusual organization situation' pursuant to 20 C.F.R. § 639.3(i)(8)." Pls.' Resp. 5-6. But rather than present evidence as to this unusual organization, plaintiffs argue that the present motion does not address that "theory of liability." *Id.* But for the reasons articulated above, this Court disagrees. The aggregation of rigs into a single site of employment is essential to plaintiffs' recovery here.

Further, plaintiffs incorrectly construe 20 C.F.R. § 639.3(i)(8) as a theory of liability. Rather, it is more accurately a safety valve to allow courts to aggregate workplaces into single sites of employment if an employer has designed their organizational structure to evade the WARN Act. However, plaintiffs provide no evidence that the organizational structure is "unusual." To the contrary, plaintiffs assert—albeit without evidence—that Trinidad Drilling follows industry standards. Neither to plaintiffs present any evidence that the defendant attempted to evade the WARN Act's requirements when it organized the rigs. At bottom, there is no evidence that the rigs constitute a truly unusual organizational situation under 20 C.F.R. § 639.3(i)(8).

**D.  This determination covers all theories of liability under the WARN Act.**

Plaintiffs argue that the Trinidad Drilling's motion for summary judgment only addresses liability under 20 C.F.R. § 639.3(i)(3) and (4), but does not address whether the terminations constituted "Plant Closings" under 20 C.F.R. §§ 639.3(b), (j), or whether Trinidad Drilling's organization is a "truly unusual organizational structure" under 20 C.F.R. § 639.3(i)(8). Pls.' Opp'n 5-6. According to plaintiffs, even if this Court grants the instant summary judgment motion, the case must survive. But the only theory of liability here is that employees were terminated without the notice required by the WARN Act. As noted, the WARN Act only requires advance notice in the event of a mass layoff or plant closing, and both events require at least 50 employees be affected *at a single site of employment*. Defendant's motion for summary judgment specifically maintains that there were not enough employees

Taken as single sites, there were not enough employees at any rig to trigger the requirements

**V.     CONCLUSION**

In sum a reasonable jury could not find that Trinidad Drilling ordered a mass layoff or plant closing under the WARN Act. Plaintiffs failed to raise a genuine fact issue on whether the employee reductions at any of its rigs resulted in the loss of employment at a single site of employment for at least 50 employees. Plaintiffs have presented no evidence that Trinidad Drilling's rigs can be aggregated into single sites of employment based on geographic location. Specifically, they have failed to raise a genuine fact issue on whether the rigs are in a reasonable geographic proximity or have a common operational purpose.

A separate order shall issue granting summary judgment.

DATE:  1/30/17

Royce C. Lamberth
United States District Judge